194 N.J. Super. 298 (1984)
476 A.2d 869
CAPITOL MOVIES, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
CITY OF PASSAIC, A MUNICIPAL CORPORATION AND THE CITY COUNCIL OF THE CITY OF PASSAIC, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 1, 1984.
Decided June 6, 1984.
*300 Before Judges BOTTER, PRESSLER and O'BRIEN.
James M. McGovern, Jr. argued the cause for appellant (Abramoff, Christie, Fox & Zaro, attorneys; James M. McGovern, on the brief).
John J. McKniff, City Attorney for the City of Passaic, argued the cause for respondent (Mark Weber, on the brief).
The opinion of the court was delivered by PRESSLER, J.A.D.
The issue raised by this appeal is the validity of an ordinance adopted by defendant City of Passaic which limits the showing of "X-rated" films to the hours of 7 p.m. to midnight. The trial judge entered summary judgment sustaining the validity of the ordinance,[1] rejecting the constitutional challenge brought by plaintiff Capitol Movies, Inc. (Capitol). We reverse.
The record is regrettably sparse and, in our view, completely devoid of the proofs necessary to sustain the constitutionality of the intrusion by this ordinance upon the protected interest in free speech.
Appellant Capitol has been operating a motion picture theater in downtown Passaic, under city license, since 1972. The affidavits submitted by Capitol state that the theater is a 3,500 seat facility showing "X-rated" films during its regular hours of operation, 11 a.m. to 7 p.m. Plaintiff asserts that the theater is an aged structure requiring the expenditure of approximately $1,000 a day in operating costs. It is also used occasionally as *301 a concert hall for evening performances by rock-music groups. The affidavit of the theater's manager states that without the display of "X-rated" films during daytime hours, operating costs would not be met and the business would "cease to exist." Plaintiff has in the past experimented with the showing of "G" and "PG" movies and with Spanish language films but has found that these films have failed to produce enough revenue to sustain the business operation. Prior attempts to show "X-rated" films in the evening had also proved unsuccessful, apparently because there is very little pedestrian traffic after 7 p.m. in the area in which the theater is located. It appears that there is one other theater in the City of Passaic which shows "X-rated" films, the Montauk Theater, which is not a party to this action.
It has been represented to us that the adoption of this ordinance was a matter of some controversy within the governing body and that it had in fact been vetoed by the mayor and ultimately passed over his objection. That representation constitutes the entire legislative history of this ordinance which appears in the record. The ordinance itself contains no statement of purpose. The City's attorney represented that no verbatim transcriptions of counsel debates are made. Minutes of the council meetings at which the ordinance was discussed were not produced. Neither factual nor expert testimony in support of the ordinance was proffered. The City further concedes that there has never been a law enforcement problem attributable to the operation of the theater. No complaints have been made against it for admitting underage persons, and no criminal activity, public disturbances, breaches of the peace, or other reported incidents have occurred in the vicinity attributable to the theater's operation.
The sole purpose of the ordinance, as represented by the City attorney, is to protect downtown shoppers from contact with persons who might be leaving the theater and to protect the welfare of the children of the City from whatever unarticulated dangers or adverse influences they might be subjected to by *302 reason of the showing of the films to an adult audience during those times of the day when youngsters might be on the street. However, other than their illegal admission to the theater,[2] an occurrence which has not in fact been asserted, there is no articulation of what these dangers and adverse influences would be.
The record is devoid of any physical description of the theater, and it is not suggested that pedestrians can see into the theater from the sidewalk or that any offensive advertising has been displayed to the public. There is no suggestion beyond the barest speculation that the showing of "X-rated" films at the theater during daytime hours has discouraged shoppers from using the downtown area or that whatever adverse effect the presence of this theater might have on the community would be ameliorated by the time restrictions imposed by the ordinance.
In view of this total lack of proof that there is any legitimate governmental interest which might be advanced as a result of the ordinance, we are constrained to conclude that its restriction on protected speech is unconstitutional.
We recognize the state constitutional requirement that ordinances of municipal corporations be liberally construed in their favor. N.J. Const. (1947), Art. IV, § VII, par. 11. And see Hudson Circle Servicenter, Inc. v. Kearny, 70 N.J. 289, 298 (1976). Thus, as a matter of state constitutional compulsion, a municipal ordinance is presumed to be reasonable, and the burden of persuasion respecting its alleged arbitrariness and unreasonableness rests on the party seeking to overturn it. See Quick Chek Food Stores v. Springfield Tp., 83 N.J. 438, 447 (1980). Applying these principles, our courts have repeatedly *303 sustained municipal ordinances, whether enacted under the general police power or under the zoning power, which restrict the hours of operation of particular businesses. See Quik Chek Food Stores, supra, and cases collected therein, 83 N.J. at 448.
Different principles control, however, where the activity which is the subject of municipal regulation is constitutionally protected. This is particularly true when the constitutionally protected interest is free speech within the intendment of the First and Fourteenth Amendments of the Federal Constitution. It is a matter of well-settled constitutional law that a regulation which restricts the time, place or manner of protected speech will survive constitutional scrutiny only if it meets a three-prong test. First, the regulation must be justified without reference to the content of the regulated speech. Second, the regulation must serve a significant governmental interest by the least restrictive possible means. Third, the regulation must leave open ample alternative channels for the communication of the information. Erznoznik v. City of Jacksonville, 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975); State v. Miller, 83 N.J. 402, 412 (1980). The evidential corollary of this three-prong test is that the burden of persuasion shifts from the party attacking the regulation to the party imposing the regulation. Thus, where the subject of the regulation is a constitutionally protected interest, the challenger need not prove that the regulation is arbitrary and unreasonable. The governmental agency must prove that all of the criteria prerequisite to permissible regulation have been met. See, e.g., Schad v. Mt. Ephraim, 452 U.S. 61, 71-72, 101 S.Ct. 2176, 2184-2185, 68 L.Ed.2d 671 (1981); Erznoznik, supra; United States v. O'Brien, 391 U.S. 367, 376, 88 S.Ct. 1673, 1678, 20 L.Ed.2d 672 (1968); Trombetta v. Atlantic City, 181 N.J. Super. 203, 227-228 (Law Div. 1981), aff'd o.b. 187 N.J. Super. 351 (App.Div. 1982).
If the regulated activity here constitutes protected free speech, then it is clear that the City of Passaic cannot support *304 the validity of the ordinance merely by relying on the state constitutional presumption of validity, on the statutory right accorded municipalities by N.J.S.A. 40:52-1 and 2 to regulate and license places of public amusement, or on the general power to restrict the hours of operation of businesses which are not engaged in constitutionally protected activity. Rather, the City must affirmatively bear the burden of demonstrating compliance of this ordinance with the constitutional criteria for free-speech regulation. We are persuaded that the activity here does implicate a constitutionally protected interest, that the burden of demonstrating the validity of the ordinance was on the City of Passaic, and that it failed to sustain this burden.
There is no doubt that the regulated activity here, the showing of motion pictures, is within the ambit of the free-speech protections of the First and Fourteenth Amendments. Schad v. Mt. Ephraim, supra; Adams Newark Theatre Co. v. Newark, 22 N.J. 472, 475-476 (1956), aff'd 354 U.S. 931, 77 S.Ct. 1395, 1 L.Ed.2d 1533 (1957). We are aware that the United States Supreme Court, in Young v. American Mini Theatres, Inc., 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976), recognized the constitutional validity of disparate governmental regulation of "X-rated" motion pictures whose content consists of "erotic materials that have some arguably artistic value." 427 U.S. at 70, 96 S.Ct. at 2452. But while "society's interest in protecting this type of expression is of a wholly different, and lesser, magnitude than the interest in untrammeled political debate," (ibid.), Young nevertheless holds that such expression cannot be wholly suppressed and that access to it cannot be substantially impaired. Thus, as we read the plurality opinion in Young, the three-prong test is only minimally modified when the subject of free-speech regulation is erotic expression. The requirement that the regulator demonstrate that the regulation serves a significant governmental interest remains intact as does the necessity for it to demonstrate that the regulation leaves open ample alternative channels *305 for the communication of the expression. What is impacted upon by Young is the first prong of the test, namely, that the regulation can be justified without reference to the content of the regulated speech. We understand Young to stand for the proposition that where the content of the regulated speech is so-called erotica, special regulation may be justified on that basis alone, provided, however, that the regulation meets the other two prongs of the test, first by serving a legitimate public interest and second by not substantially restricting access to the expression. In short, while minimal and incidental intrusions based on content may be constitutionally tolerable, significant and substantial intrusions are not. Cf. Members of the City Council of the City of Los Angeles v. Taxpayers for Vincent, ___ U.S. ___, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984).
The regulation before the Court in Young was an ordinance adopted by the City of Detroit, the object of which was to disperse the location of theaters showing films whose content is primarily sexually oriented  the so-called adult "X-rated" films. In the trial court, the City of Detroit had introduced substantial proofs respecting the significant governmental interest sought to be served by the ordinance, referred to by it as an "Anti-Skid Row Ordinance" and also commonly referred to as an anti-war zone ordinance. See generally, Annot., "Validity of `War Zone' Ordinances Restricting Location of Sex-Oriented Businesses," 1 A.L.R. 4th 1297 (1980). Its proofs included the expert testimony of urban planners and real estate experts who gave opinion evidence that "the location of several such businesses in the same neighborhood tends to attract an undesirable quantity and quality of transients, adversely affects property values, causes an increase in crime, especially prostitution, and encourages residents and businesses to move elsewhere." 427 U.S. at 55, 96 S.Ct. at 2445. Based on the finding of the court below that a significant governmental interest had been proved, and considering the lesser degree of constitutional solicitude to which erotic expression is apparently entitled, Young sustained the ordinance only because it found the effect of the regulation to *306 be minimal. This conclusion was based on the undisputed fact that it would not deny exhibitors of adult films access to the market and it would not have any real effect on the ability of the public "to satisfy its appetite for sexually explicit fare." The ordinance thus passed constitutional muster because the Court was satisfied that, "Viewed as an entity, the market for this commodity is essentially unrestrained." 427 U.S. at 62, 96 S.Ct. at 2448.
The record before us does not permit the conclusion that the Passaic ordinance, which severely restricts the hours of operation of plaintiff's theater, one of only two such theaters in the municipality, will leave the market for adult films "essentially unrestrained." To the contrary, plaintiff's undisputed proofs demonstrate that a required daytime closing substantially affects patronage. The inference is unavoidable that those who would be patrons during the day are not willing to be patrons late at night in an area in which there is virtually no pedestrian activity and apparently little other street activity.
We conclude that the restriction imposed by this ordinance on hours of operation constitutes more than a minimal intrusion. See People v. Glaze, 27 Cal.3d 841, 166 Cal. Rptr. 859, 614 P.2d 291 (Sup.Ct. 1980), reaching the same conclusion and invalidating an ordinance restricting the operational hours of an adult picture arcade on the additional ground that advancement of a legitimate public interest had not been proved by the municipality.
Even beyond the question of the substantiality of the intrusion is the fact that Passaic has not undertaken, except by way of surmise and speculation, to demonstrate the nature of the governmental interest to be served by the regulation or the manner in which the regulation might serve any legitimate public interest. This failure, in our view, is fatal to the validity of the regulation.
In Erznoznik the Supreme Court made plain that:
[i]n concluding that this ordinance is invalid we do not deprecate the legitimate interests asserted by the city.... We hold only that the present ordinance does *307 not satisfy the rigorous constitutional standards that apply.... Where First Amendment freedoms are at stake we have repeatedly emphasized that precision of drafting and clarity of purpose are essential. These prerequisites are absent here. [422 U.S. at 217-218, 95 S.Ct. at 2277]
These observations apply equally to the Passaic ordinance here. See also Fantasy Book Shop, Inc. v. City of Boston, 652 F.2d 1115 (1st Cir.1981).
We are aware that the validity of an ordinance identical to the Passaic ordinance was sustained in New Chancellor Cinema, Inc. v. Town of Irvington, 169 N.J. Super. 564 (Law Div. 1979). We are unable to determine from that opinion whether the municipality in that case made any factual showing to support the bare assertion that the ordinance would serve its governmental interest in preserving the quality of its neighborhoods and protecting the morals of its youth. Nor is there any indication in the opinion of facts supporting the finding that the effect of the ordinance was minimal. We therefore express no view as to whether New Chancellor was decided consistently with governing constitutional principle except to note that, if these factual showings were not made, the decision was incorrect.
The judgment is reversed, and we remand for entry of judgment in favor of plaintiff.
NOTES
[1] A second challenged provision of the ordinance permitting the municipal suspension of a movie theater license "for any cause at any time" was invalidated by the trial court, and defendant does not cross-appeal.
[2] See N.J.S.A. 2C:34-2 and 3. And see State v. Foglia, 182 N.J. Super. 12 (App.Div. 1981), certif. granted 89 N.J. 436 (1982). It is clearly not a criminal offense to admit persons over the age of 18 years to a theater exhibiting an obscene film.