238 N.J. Super. 634 (1989)
570 A.2d 495
BURLINGTON ASSEMBLY OF GOD CHURCH, PLAINTIFF,
v.
ZONING BOARD OF ADJUSTMENT TOWNSHIP OF FLORENCE AND TOWNSHIP OF FLORENCE, DEFENDANTS.
Superior Court of New Jersey, Law Division Burlington County.
Decided April 25, 1989.
*636 Frederick W. Hardt for plaintiff.
Arthur L. Shanker for defendant Board of Adjustment (Weiner, Ostrager, Fieldman & Zucker, attorneys).
Michael S. DiCroce for defendant Township of Florence (Slimm, Dash & Goldberg, attorneys).
HAINES, A.J.S.C.
The Assembly of God Church ("church") owns 106 acres of land in Florence Township, Burlington County, upon which it operates, as permitted zoning uses, a church, a school with 300 students and housing for a fleet of 35 buses. It wishes to operate a radio station on the property which will broadcast church, school and public interest programs, the latter being overseen by a panel of local citizens. The station, which requires the construction of two antenna towers on the school property 184 feet in height, will be located in the school building. The towers cannot be constructed without a zoning variance, applications for which were denied by the local board of adjustment and then granted by this court in an earlier decision.
The court's reversal did not end the litigation. Damage claims, based upon the federal Civil Rights Act, 42 U.S.C.A. § 1983, remain for resolution. These claims rest upon the allegation that the township's zoning ordinance and the board of adjustment's refusal to grant a variance denied the church's constitutional rights to freedom of religion and freedom of speech. The board now moves for partial summary judgment dismissing the church's civil rights claims and the church, by cross-motion, seeks summary judgments against the board and the township establishing liability of both with respect to the civil rights claims. This opinion concludes that the board's motion must be denied and the cross-motion of the church granted.

*637 A. Freedom of Religion.

(1) Immunity.

The board first argues that it has immunity from damage liability because it was acting judicially in deciding the variance issue. This argument, if directed to the members of the board, would be correct. However, the board itself is not immune. T & M Homes, Inc. v. Twp. of Mansfield, 162 N.J. Super. 497, 393 A.2d 613 (Law Div. 1978); Centennial Land & Dev. Co. v. Twp. of Medford, 165 N.J. Super. 220, 397 A.2d 1136 (Law Div. 1979). Nor is the Township of Florence immune. Municipalities have no immunity in a suit for damages under the Civil Rights Act. Owen v. City of Independence, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). It is clear that if the "custom and practice" of the community, as reflected in the township's ordinance and the decisions of the board, violate the church's constitutionally protected rights, both board and township are liable for damages.

(2) Religious Uses and the First Amendment.

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...." The New Jersey Constitution (1947), Art. 1 par. 3, provides the same protection.
The question here is whether the proposed radio station constitutes a religious use with which the municipality, in the adoption of its zoning ordinance and the board of adjustment in its implementation of that ordinance, cannot interfere. Religious uses are broadly defined. Thus, 2 Anderson, American Law of Zoning (3 ed. 1986), § 12.29 says:
The limitations on municipal power to regulate ... [the religious] aspects of community life are severe. The courts react sharply when municipal governments move to curb religious activity; the ends of municipal zoning regulation seldom are considered important enough to justify restrictions which cripple or even seriously inconvenience a religious institution. [Id. at 558]
*638 Other commentaries broaden the theme. In 2 Rathkopf, The Law of Zoning and Planning (4 ed. 1988), § 20.03, the following appears:
It has previously been commented upon that the concept of what constitutes a Church has changed from a place of worship alone, used once or twice a week, to a Church used during the entire week, nights as well as days, for various parochial and community functions. It seldom consists of one building, but where it does, the building is itself of sufficient size to accommodate all of its various activities. The question arises as to the extent to which the additional activities are covered by the cloak of immunity which traditionally has been extended to the Church.
The language of the courts in several cases indicates that it is difficult to find an activity which, if sponsored by the Church, would not share the immunity. [Id. at 20-53]
1 Rohan, Zoning and Land Use Controls (1986) 3.05[4] suggests the following test:
The right of a community to impose appropriate and reasonable restrictions upon the use of property for religious purposes does not allow it to adopt regulations unrelated to the public welfare, which in effect exclude a proposed religious use from a residential district. The denial of a request for permission to erect a house of worship must be supported by evidence that such denial bears a real and substantial relationship to the community's public welfare and is not an arbitrary or unreasonable restriction. The preferred status of a religious institution will be disregarded, however, where the court is convinced that a proposed use will increase community hazards to the point of real personal danger. [Id. at X-XXX-XXX]
The New Jersey courts have not decided whether a radio station, operated by a church on church property in furtherance of its own religious purposes, can be prevented from doing so by a zoning regulation. Nevertheless, our courts have provided broad support for the constitutional guarantees of religious freedom, sometimes in a zoning context. Thus in N.J. Bd. of Higher Ed. v. Shelton College, 90 N.J. 470, 448 A.2d 988 (1982), the Court said:
The First Amendment guarantee of religious freedom protects against more than direct State proscription of religious practices. Any State action that unduly burdens the free exercise of religion violates the First Amendment. [at 482; citations omitted]
Farhi v. Deal Boro. Comm'rs., 204 N.J. Super. 575, 499 A.2d 559 (Law Div. 1985), held that a municipal zoning ordinance which prevented the gathering of religious worshipers in a *639 private residence was an unconstitutional denial of the free exercise of religion. In St. John's Evangelical Lutheran Church v. Hoboken, 195 N.J. Super. 414, 479 A.2d 935 (Law Div. 1983), the court held that a shelter for homeless people, operated by a church on its own property, was a "religious use" with which the municipal zoning ordinance could not interfere. The court said:
Regardless of how the City's zoning ordinance is construed, a municipality may not exercise its zoning power in violation of the fundamental tenets of the First Amendment. Government is precluded under the First Amendment from "prohibiting the free exercise" of religion.
....
Under the First Amendment government must be neutral toward religion. Government may breach that neutrality if it denies or unreasonably limits the religious use of land. It is indeed late in the day for government to interfere with religion. Pilgrims and others who fled to this country in order to pursue their religious beliefs where and how they wished, undoubtedly thought they had ended government intrusion on religious liberty. [at 419, 479 A.2d 935; citations omitted]
Justice Clifford, dissenting in State v. Cameron, 100 N.J. 586, 498 A.2d 1217 (1985), a case involving interference through zoning with the use of a house for religious purposes, stated his view of the First Amendment very clearly:
... [O]ne must recognize that the power to affect, through zoning, religious activity in a residential area surely has its limits. Like any other aspect of the police power, the zoning authority must be exercised for the general welfare of the community, and "must be exercised within constitutional limits." Moreover, courts have held that religious activity itself is in furtherance of public morals and the general welfare, and that religious institutions enjoy a highly-favored and protected status, which severely curtails the permissible extent of governmental regulation in this area....
The free-exercise clauses of United States and New Jersey Constitutions extend to all lawful conduct founded in religious belief. Deprivation of the protections afforded thereby requires the State to demonstrate some "overriding governmental interest", that justifies the "substantial infringement of appellant's First Amendment right" and to show that "no alternative forms of regulation would combat such abuses without infringing First Amendment rights." [at 606-607; citations and footnote omitted]
Numerous cases in foreign jurisdictions have considered the definition of religious use in a zoning context. Matter of Faith *640 For Today, 11 A.D.2d 718, 204 N.Y.S.2d 751 (1960), aff'd 9 N.Y.2d 761, 215 N.Y.S.2d 70, 174 N.E.2d 743 (1961), considered an issue closely comparable to the one addressed here. The New York court held that the production of television programs for the propagation of the gospel could not be prohibited by a zoning regulation. Uses recognized as religious in other cases are illustrative: education for children of church members, Catholic Bishop of Chicago v. Kingery, 371 Ill. 257, 20 N.E.2d 583 (1939); a school, Concord v. New Testament Baptist Church, 118 N.H. 56, 382 A.2d 377 (Sup.Ct. 1978); a day care center, Unitarian Universalist Church v. Shorten, 63 Misc.2d 978, 314 N.Y.S.2d 66 (Sup.Ct. 1970); a center for the performing arts, Shore Hebrew Academy v. Wegman, 105 App.Div.2d 702, 481 N.Y.S.2d 142 (1984); a home for developmentally disabled persons, Diocese of Buffalo v. Buczkowski, 112 Misc.2d 336, 446 N.Y.S.2d 1015 (1982), aff'd 90 App.Div.2d 994, 456 N.Y.S.2d 909 (1982); a center for counselling drug users, Slevin v. Long Island Jewish Medical Center, 66 Misc.2d 312, 319 N.Y.S.2d 937 (Sup.Ct. 1971); operation of a coffee house, Synod of Chesapeake, Inc. v. City of Newark, 254 A.2d 611 (Del. Ch. 1969).
The Assembly of God Church owns and operates a 12-grade parochial school teaching a "fundamental" brand of education. Its proposed radio station, to be located within its school and operated as a part of its school program, is intended to advance the religious beliefs of the church. It intends to operate the station through its totally owned subsidiary, Real Life Broadcasting, Inc., to which a Federal Communications Commission (F.C.C.) license has been issued. This permits operation of the only A.M. radio station in Burlington County.
The operation of the proposed station is an activity related to the purposes of the Assembly of God Church and is, therefore, a religious use. Churches convey their constitutionally protected religious messages primarily by means of the written and spoken word. In doing so, they are not confined to utterances within a church building but are free to disseminate their *641 beliefs through every avenue of communication. Radio and television facilities are not denied to them. Radio and television broadcasts, over many years, have permitted millions of people to see and hear religious services and religious leaders. The Assembly of God Church, in desiring to operate a radio station in connection with its church-owned school, is simply adding one more activity to its list of religious undertakings.
The proposed radio station, as a religious use, is protected by our state and federal constitutions through their guarantees of the free exercise of religion. A zoning regulation which denies that use can accommodate the constitutional demand only if it is shown by the municipality to reflect an "overriding governmental interest" with no alternative available means to combat the claimed undesirable use. United States v. Lee, 455 U.S. 252, 257, 102 S.Ct. 1051, 1055, 71 L.Ed.2d 127 (1982); Cameron, supra, 100 N.J. at 607, 498 A.2d 1217 (Clifford, J., dissenting). No serious effort has been made by defendants in this case to support any claim of "overriding governmental interest" or the lack of any alternative available means with which to restrict the activity. The facts deny such an interest; they may indicate the lack of an alternative but that lack in this setting  the simple question of tower height  cannot justify the prohibition of the religious use.
The municipality and the board have demonstrated two concerns in adopting and enforcing the legislation which prevents the operation of the proposed radio station. They oppose high towers on the ground that they represent a safety hazard; they resist the operation of a radio station because its transmissions are likely to cause some interference with television, telephone and radio usage in the neighborhood. Their safety concern is illusory. The church plans to build its towers a good distance from neighboring properties, not difficult in view of the fact that it owns 106 acres of land. The proofs amply demonstrate the absence of any real risk that the towers may fall or be struck by lightning; they are too well designed for those risks to be given any weight. The municipal concern about interference *642 is equally unconvincing. The F.C.C., before granting a radio license to the church's subsidiary, determined that the station could be operated at "acceptable" interference levels.
Congress, in adopting legislation establishing the F.C.C., preempted the field of radio broadcasting with respect to radio transmissions and the interference that such transmissions may cause. Head v. New Mexico Bd. of Examiners in Optometry, 374 U.S. 424, 429-430, 83 S.Ct. 1759, 1762-63, 10 L.Ed.2d 983 (1963); National Broadcasting Co. v. U.S., 319 U.S. 190, 217, 63 S.Ct. 997, 1009, 87 L.Ed. 1344 (1943); In re 960 Radio, Inc., F.C.C. 85-570 (1985). Since the F.C.C. has licensed the church's proposed radio station, it has made clear the government's interest in the encouragement of its operation. Common sense supports the same conclusion. Radio communication has become a central part of the daily life of our society. Radio keeps us informed; it promotes our education. The deprivation of that communication would be a great loss. A government which serves its people well is one which expands the avenues of communication. Its "overriding interest" is one which favors radio operations, not one which inhibits them.
The Florence Township zoning ordinance and its enforcement by the board of adjustment, by preventing the operation of the church's proposed radio station, frustrates a religious activity. No overriding governmental interest justifies that frustration. Consequently, the township and the board of adjustment have impermissibly denied the right of the church to engage in a protected religious activity and are liable for such damages as it may prove.

B. Freedom of Speech.

The proposed radio broadcasts of the Assembly of God Church constitute speech protected by the First Amendment. In Anti-Defamation League of B'Nai B'rith, Pac. S.W.R.O. v. F.C.C., 403 F.2d 169 (D.C. Cir.1968), cert. den. 394 U.S. 930, 89 *643 S.Ct. 1190, 22 L.Ed.2d 459 (1969), the circuit court found the following statement in the F.C.C. opinion to be "unanswerable":
For the FCC to promulgate rules regarding permissible and impermissible speech relating to religion would be not only an egregious interference with free speech in broadcasting, but also an unconstitutional infraction of the free exercise clause and the establishment clause of the First Amendment. [403 F.2d at 171-172]
Free speech can be regulated only as to "time, place and manner." State v. Miller, 83 N.J. 402, 416 A.2d 821 (1980); Capitol Movies, Inc. v. City of Passaic, 194 N.J. Super. 298, 476 A.2d 869 (App.Div. 1984). Regulations meet this requirement only if they survive a three-pronged test, namely, they must: (1) be justified without reference to the content of the regulated speech; (2) serve a significant governmental interest by the least restrictive possible means; and (3) leave open ample alternative channels for the communication of the information. Erzonznik v. City of Jacksonville, 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975); State v. Miller, supra.
The church agrees that the Florence Township zoning ordinance is "content neutral" and is willing to concede for present purposes that "ample alternative channels for communication" have been left open. It argues, however, that the ordinance does not "serve a significant governmental interest by the least restrictive possible means."
In the present setting there is no difference between a "significant governmental interest" and an "overriding governmental interest." The latter interest was found lacking when this court decided that the guarantee of religious freedom had been denied to the church. The same conclusion, for the same reasons, must be reached in deciding whether the zoning regulation advances a "significant governmental interest" which permits the municipality to restrict freedom of speech. It does not. The government's interest, in fact, runs in the opposite direction.
Florence Township's ordinance and its enforcement by the board of adjustment therefore unconstitutionally deprive the *644 church of freedom of speech, entitling it to recover such damages as it may prove.

Conclusion.
The zoning board's motion for summary judgment is denied. The church's cross-motion for summary judgment is granted. The question of damages will be tried on a date to be fixed.