603 A.2d 124

NORTH JERSEY NEWSPAPERS COMPANY, PLAINTIFF, v. BOROUGH OF KENILWORTH, CHIEF BRENT DAVID AND PATROLMAN JOHN DOE, DEFENDANTS.

Superior Court of New Jersey
Chancery Division Union County

Decided August 8, 1991.

*McGimpsey & Cafferty,* for plaintiff.

*Jacqueline A. Suszko,* for defendants.

BOYLE, P.J.Ch.

Plaintiff, North Jersey Newspaper Company ("North Jersey"), is before the court on a return date of an order to show cause seeking to enjoin the enforcement by defendant, Borough of Kenilworth ("Kenilworth"), of *N.J.S.A.* 39:4-64.[1]  *N.J.S.A.* 39:4-64 prohibits the throwing or dropping of any object from a moving vehicle.  Plaintiff, North Jersey, is an authorized New Jersey corporation which owns and publishes a bi-weekly newspaper known as "The Suburban News."  Defendant, Kenilworth, is a New Jersey municipal corporation.  Plaintiff contends that to the extent *N.J.S.A.* 39:4-64 is applied to restrict the distribution of newspapers, the statute violates plaintiff's freedom of speech guaranteed by the First and Fourteenth

---

[1]This opinion forms the basis of a longer bench decision rendered on August 8, 1991.

Amendments to the Federal Constitution and by Article I, paragraph 6 of the New Jersey Constitution.

The facts are not in dispute. On July 12, 1991, North Jersey, through its agent, Peter Price, was delivering the newspaper known as "The Suburban News" to residents of Kenilworth. Price was driving a vehicle at a speed of approximately 25 miles an hour in the vicinity of Michigan and Clinton Avenues. Patrolman Henry Moll of the Kenilworth Police Department observed Price and his passenger throwing newspapers from windows on both the passenger and driver sides of the vehicle onto the lawns of nearby homes. Patrolman Moll stopped the vehicle and issued a summons to Price for violation of *N.J.S.A.* 39:4–64. *N.J.S.A.* 39:4–64(a) provides:

> No person shall throw or drop any bundle, object, article or debris of any nature from a vehicle whether in motion or not when such vehicle is on a highway. The words "object, article or debris of any nature" as used in this section shall be deemed to include a lighted cigarette, cigar, match or live ashes, or any substance or thing in and of itself likely to cause a fire, but such inclusion shall not be deemed to in any wise limit the generality of said words "object, article or debris of any nature." Any person who violates this section shall be subject to a fine of not less than $100.00 nor more than $500.00 for each offense.

Plaintiff, North Jersey, contends that the enforcement of *N.J.S.A.* 39:4–64, so as to prohibit the aforedescribed method of distributing newspapers, is unconstitutional.

"It is unquestioned that a necessary predicate to freedom of speech and press is the freedom to disseminate ideas, information and newspapers in public places." *Gannett Satellite Information Network v. Township of Pennsauken,* 709 *F.Supp.* 530, 535 (D.N.J.1989) (citing *Talley v. California,* 362 *U.S.* 60, 63, 80 *S.Ct.* 536, 538, 4 *L.Ed.*2d 559 (1980); *Lovell v. Griffin,* 303 *U.S.* 444, 452, 58 *S.Ct.* 666, 669, 82 *L.Ed.* 949 (1938)). "Liberty of circulating is as essential to that freedom as liberty of publishing; indeed without the circulation, the publication would be of little value." *In re Jackson,* 96 *U.S.* 727, 733, 24 *L.Ed.* 877, 879 (1878). However, the time, place and manner of protected speech may be limited by state regulation which

satisfies the three-prong test enunciated in *Capitol Movies, Inc. v. City of Passaic,* 194 *N.J.Super.* 298, 476 *A.*2d 869 (App.Div. 1984).

First, the regulation must be justified without reference to the content of the regulated speech. Second, the regulation must serve a significant governmental interest by the least restrictive possible means. Third, the regulation must leave open ample alternative channels for the communication of the information. *Erznozik v. City of Jacksonville,* 422 *U.S.* 205, 95 *S.Ct.* 2268, 45 *L.Ed.*2d 125 (1975) *State v. Miller,* 83 *N.J.* 402, 412 [416 *A.*2d 821] (1980). The evidential corollary of this three-prong test is that the burden of persuasion shifts from the party attacking the regulation to the party imposing the regulation. [194 *N.J.Super.* at 303, 476 *A.*2d 869]

■ *N.J.S.A.* 39:4–64 clearly satisfies the content-neutrality prong of the time, place and manner test. The statute was drafted to potentially ensnare those who jettison any object from a moving vehicle. The statute evinces an obvious disregard for the message, if any, borne by the object and is, therefore, content-neutral. Also, as dictated by the third prong of the test, *N.J.S.A.* 39:4–64 leaves open alternative channels for circulation of the newspapers. Those alternative channels include pedestrian distribution, bulk mailing, and making copies available for pick-up by consumers. North Jersey has complained that these alternatives are burdensome and inefficient. "Although the alternative distribution method may be more costly, the First Amendment does not guarantee a right to the least expensive means of expression." *Gannett Satellite Information Network v. Metropolitan Transit Authority,* 745 *F.*2d 767, 774 (2 Cir.1984). Plaintiff's protestations notwithstanding, the court finds that alternative channels for distribution remain open and that the third prong of the test is satisfied. Thus, the case distills to whether *N.J.S.A.* 39:4–64 serves a significant government interest by the least restrictive possible means.

Kenilworth, citing the potential for injuries and accidents created by the practiced method of distribution, contends that its enforcement of *N.J.S.A.* 39:4–64 was an attempt to advance government's interest in the public safety. North Jersey characterizes *N.J.S.A.* 39:4–64 as an anti-littering statute. The

court agrees. North Jersey relies upon the statute's legislative history.

> The legislation raises the fines assessed for *littering* highways to not less than $100.00 nor more than $500.00 from the present limit of not less than $25.00 nor more than $200.00 for each offense. The *purpose of this legislation is to discourage littering of highways* by raising the fine assessed for committing the offense. [Senate Transportation and Communications Committee, Statement to *Senate Bill* 981 (1980); emphasis supplied]

> The legislation raises the fines assessed for *littering* of the highways to not less than $100.00 nor more than $500.00 for each offense from the present limit of not less than $25.00 nor more than $200.00 for each offense. [Assembly Transportation and Communications Committee statement to *Senate Bill* 981 (1981); emphasis supplied]

From the legislative history, the court concludes that *N.J.S.A.* 39:4–64 was enacted in advancement of the government interest in curbing littering. The court notes Kenilworth's observation that an individual throwing newspapers from the windows of a moving vehicle is either not paying attention to where the papers are being thrown or not paying attention to the road. However, defendant's public safety concerns may be more efficiently remedied by enforcement of a careless driving statute. *N.J.S.A.* 39:4–97 provides:

> A person who drives a vehicle on a highway carelessly or without due caution and circumspection, in a manner so as to endanger, or be likely to endanger, a person or property, shall be guilty of careless driving.

Although strict enforcement of an anti-littering statute may have a salutary effect upon the public safety, that cause is more directly advanced by enforcement of a careless driving statute. If furtherance of the public safety was Kenilworth's true aim, it should have operated with the precise instrument, *N.J.S.A.* 39:4–97 rather than the blunt instrument, *N.J.S.A.* 39:4–64.

Other courts have considered the constitutionality of anti-littering laws which affect freedom of speech.

> The fact that an ordinance is not specifically directed at curtailment of newspaper distribution is immaterial. The crucial fact from the standpoint of the First and Fourteenth Amendments is that, as applied, the ordinance has the effect of impermissibly restricting distribution of newspapers. [*Philadelphia News, Inc. v. Borough Council of Swarthmore,* 381 *F.Supp.* 228, 243, *n.* 10 (E.D.Pa.1974)]

█ Kenilworth certainly has a legitimate interest in the cleanliness and aesthetic appeal of its streets. *See Metropolitan, Inc. v. City of San Diego,* 453 *U.S.* 490, 101 *S.Ct.* 2882 69 *L.Ed.*2d 800 (1981). However, one person's litter is another's literature. The State's anti-littering interest has been held to yield to the disseminator's invocation of the First Amendment.

█ In *Schneider v. State of New Jersey (Town of Irvington),* 308 *U.S.* 147, 60 *S.Ct.* 146, 84 *L.Ed.* 155 (1955), the Supreme Court was:

> ... of the opinion that the purpose to keep the streets clean and of good appearance is insufficient to justify an ordinance which prohibits a person rightfully on a street from handing literature to one willing to receive it ... [T]he public convenience in respect of cleanliness of the streets does not justify an exertion of the police power which invades the free communication of information and opinion secured by the Constitution. [308 *U.S.* at 162–63, 60 *S.Ct.* at 151–152, 84 *L.Ed.* at 165–166]

The California Supreme Court reached a similar conclusion in *Van Nuys Publishing Co. v. City of Thousand Oaks,* 5 *Cal.*3d 817, 97 *Cal.Rptr.* 777, 784, 489 *P.*2d 809, 816 (Sup.Ct.1971), *cert.* den. 405 *U.S.* 1042, 92 *S.Ct.* 1317, 31 *L.Ed.*2d 583 (1972):

> ... though attempting to meet the very real problem of accumulation of litter, the present penal enactment goes substantially beyond what is necessary to achieve the city's anti-littering objective and, in so doing, treads directly on First Amendment rights. As the United States Supreme Court observed in *Thornhill v. Alabama* (1940) 310 *U.S.* 88, 97–98, 60 *S.Ct.* 736, 746 84 *L.Ed.* 1093, there is a 'pervasive threat inherent in [the] very existence ... [of] a penal statute ... which does not aim specifically at evils within the allowable area of state control but, on the contrary, sweeps within its ambit other activities that in ordinary circumstances constitute an exercise of freedom of speech or of the press. The existence of such a statute ... results in a continuous and pervasive restraint on all freedom of discussion that might reasonably be regarded as within its purview.' [5 *Cal.*3d at 828, 97 *Cal.Rptr.* at 784, 489 *P.*2d at 816]

When the freedom of speech clashes with the State's exercise of its police power, the court must determine whether the means chosen by the State are narrowly tailored so as to avoid unnecessary restrictions of protected First Amendment activity. *Schad v. Borough of Mount Ephraim,* 452 *U.S.* 61, 70, 101 *S.Ct.* 2176, 2183–2184, 68 *L.Ed.*2d 671 (1981).

An anti-littering ordinance is overbroad if it interferes "with the freedoms of speech and press and of free communication with the First Amendment guarantees both to those who seek to circulate printed material and those who wish to receive it." *Toms River Publishing Co. v. Borough of Manasquan,* 127 *N.J.Super.* 176, 182, 316 *A.*2d 719 (Ch.Div.1974). Accordingly, Kenilworth's enforcement of *N.J.S.A.* 39:4–64 to prohibit North Jersey not from discarding but from distributing "The Suburban News" is permanently enjoined.