693 A.2d 949

THE STATE OF NEW JERSEY, (LONG HILL TOWNSHIP),
PLAINTIFF, v. CALABRIA, GILLETTE LIQUORS &
DIANE'S COUNTRY KITCHEN, DEFENDANTS.

Superior Court of New Jersey
Law Division Morris County

Decided January 24, 1997.

*John R. Pidgeon* for plaintiff.

*Marc Gettis* for defendants.

LANGLOIS, J.S.C.

On January 29, 1996, three business owners were issued summonses charging each with a violation of the Long Hill Township ordinance regulating signs, specifically, Section 35–8.3e (relevant portion underlined):

> All illuminated signs shall be either indirectly lighted or of the diffused lighting type. Group signs, if illuminated, shall be illuminated by an exterior source only in accordance with subsection 35–8.10b of this section, except that ground signs in the B–3 zone may be internally illuminated. <u>No sign shall be lighted by using unshielded incandescent bulbs or neon tubes, mirrors reflecting a direct light source or similar devices.</u> Buildings or structures may not be outlined by tubing or strings of lights for advertising purposes, except that all buildings shall be permitted strings of lights displays between November 15 and January 15 of each year.
>
> [Twp. of Long Hill, Code § 35–8.3e (1990).]

Each defendant had signs on the inside of a store illuminated by neon.[1] In municipal court, defendants challenged the constitution-

---

[1] Calabria II had two green neon "open" signs in script illuminated during business hours. Diane's Country Kitchen had two neon "open" signs and three

ality of the ordinance. With the benefit of testimony at the August trial, briefs and oral argument of counsel, Judge Bride upheld the constitutionality of the ordinance and found each defendant guilty of the violation. Fines and costs were suspended. The Defendants have appealed their convictions to the Law Division *de novo* on the record and presented the following issues on appeal:

> Point I: The Ordinance Infringes upon Freedom of Speech, in Violation of the First and Fourteenth Amendments.
>
> Point II: The Ordinance Denies Defendants Equal Protection under the Law, in Violation of the Fourteenth Amendment.
>
> Point III: Since the Ordinance Affects a Fundamental Right, It is not Entitled to Any Presumption of Validity.
>
> Point IV: The Ordinance is Unconstitutional, Due to Vagueness and Overbreadth and Serves to Deny Defendants Substantive Due Process.
>
> Point V: Defendants Should be Found Not Guilty Based Upon the Record Below.

This court has reviewed the transcript, evidence, and briefs submitted by counsel, has considered oral argument presented on December 16, 1996, and been enlightened by precedent from the United States Supreme Court, other states and higher courts of this state.

Before addressing the substantive issues, the court accepts the essentially undisputed testimony regarding the scope and purpose of ordinance. Michael Tobia, the Township planner and recognized expert in zoning and planning, testified that the present ordinance was enacted in 1990 after several years of work by the municipal boards and township committee, after solicitation of comments from residents and business owners, and after consideration of the need for a comprehensive plan for commercial development within the community. The specific section that bans the use of neon signs actually existed in prior laws and as far back as 1974.

---

white neon signs stating "deli" "catering" and "subs." Gillette Liquors had six neon signs advertising different beers and one neon "open" sign.

A purpose of the zoning ordinance is to promote a desirable visual environment in the town in a balance with the interests of the commercial businesses. Commercial signs are regulated as to size, placement, lighting source, and degree of illumination to prevent the look of "highway commercial signage."

The specific section at issue is a "generic" prohibition of any sign constructed out of tubed material filled with either a gas or a powder which, when electrified, lights up.[2] Other types of illumination—internally lit or externally lit—are permitted. The brightness of lighting is also regulated. Twp. of Long Hill, Code § 35–8.10b (1990). Mr. Tobia concluded that prohibiting the use of neon is consistent with the goal of a desirable visual environment.

Additional testimony related to the actual signs themselves, the reason for the use of the signs by each of the owners, and reference to photographs of other signs, designs, illuminations and locations throughout the Township.

The first issues to address are the last two points of defendants' appeal. These issues are first because it is a principle of judicial review that the court must not strike down legislation on constitutional grounds if a more narrow or factual basis can be found for review. *Bell v. Stafford Twp.*, 110 *N.J.* 384, 389, 541 *A.*2d 692 (1988). Defendants argue that there is no proof in the record that their signs are neon and, in a similar context, that the ordinance cannot be enforced due to the lack of definition of the term "neon."

---

[2] Neon is a rare, inert, gaseous element occurring in the atmosphere and obtained by fractional distillation of liquid air. It is colorless but glows reddish-orange in an electric discharge. It was in the late 19th century that physicists began experimenting with a method of generating light through a tube. Eventually, neon gas was used as a filling and when a high voltage was applied to the electrodes at either end of the tube, a deep red light was emitted. "Neon signs" soon decorated the exteriors of buildings. Later, the fluorescent tube was developed with a mercury-vapor filling and became useful for interior lighting. Volume 10 Encyclopedia Britannica, p. 959 (15th Ed.).

The federal and state constitutional ban on vague laws is intended to invalidate regulatory enactments that fail to provide adequate notice of their scope and sufficient guidance for their application. The terms of an ordinance must enable a person of "common intelligence, in light of ordinary experience" to understand whether contemplated conduct is lawful. The determination of vagueness must be made against the contextual background of the particular law and with a firm understanding of its purpose. The degree of vagueness that the Constitution tolerates depends on the nature of the enactment. *State v. Cameron,* 100 *N.J.* 586, 591, 498 *A.*2d 1217 (1985); *Town Tobacconist v. Kimmelman,* 94 *N.J.* 85, 119, 462 *A.*2d 573 (1983); *State v. Lashinsky,* 81 *N.J.* 1, 17, 404 *A.*2d 1121 (1979). Vague laws offend several values: that laws must give a person a reasonable opportunity to know what is prohibited; that laws must provide explicit standards for those who apply them; and that laws cannot impermissibly delegate basic policy matters to enforcers on a subjective basis with the attendant danger of arbitrary application. *Cameron, supra,* 100 *N.J.* at 591, 498 *A.*2d 1217 (citing *Grayned v. City of Rockford,* 408 *U.S.* 104, 92 *S.Ct.* 2294, 33 *L.Ed.*2d 222 (1972)).

In the Long Hill Township ordinance, neon is not defined. As Mr. Tobia testified, however, and without contradiction, neon is a term referring to signs constructed of tubes that contain a gas or powder which emits light when ignited by electrical sources. Mr. Cerulli, the zoning officer, testified that the summonses were issued for the signs lit through use of a tube, and that he knew the difference between fluorescent and neon lights. Every defendant acknowledged that he/she used a neon sign(s).

A statute does not have to specifically define every element of its provisions. The government may rely upon ordinary terms, usage and definition within the context and nature of the law. *State v. Mortimer,* 135 *N.J.* 517, 532–533, 641 *A.*2d 257 (1994). Neon has a very clear encyclopedic definition, as set forth in the footnote above. There is no vagueness problem in the enforcement of this statute. Further, there is no lack of proof in the

record that defendants each had neon signs in their businesses. Indeed, "it is a well-settled principle of constitutional law that 'one to whose conduct a statute clearly applies may not successfully challenge it for vagueness'." *State v. Finance American Corp.*, 182 *N.J.Super.* 33, 42, 440 *A.*2d 28 (App.Div.1981) (quoting *Parker v. Levy*, 417 *U.S.* 733, 756, 94 *S.Ct.* 2547, 2562, 41 *L.Ed.*2d 439, 458 (1974)). Reversal of the convictions is denied on Points IV and V.[3]

■ The issues raised in Points I, II and III are interrelated in the sense that the court must determine a standard to review this municipal ordinance. That standard is, in turn, based upon whether the ordinance regulates the content of commercial speech, or regulates only the time, place and manner of the advertisements. These issues entail a discussion of the purposes of the ordinance, the nature of the regulations, and the distinctions it seeks to draw in its regulations.

As set forth at the beginning of this opinion, the ordinance specifically directs that "No sign shall be lighted by using unshielded incandescent bulbs or neon tubes...." Twp. of Long Hill, Code § 35–8.3e (1990). The ordinance also defines sign:

> *Sign* shall mean every sign, billboard, ground sign, roof sign, wall sign, window sign, illuminated sign, and temporary sign, and shall include any visual display used to draw the attention of the public to any organization, business product, individual or service when the same is placed so that it is clearly visible to the general public from an out of doors position.

> [*Id.,* Code § 35–8.2.]

This definition is important in rejecting defendants' primary argument that the ban of neon lighting is a violation of their rights to commercial speech protected by the First Amendment. This is a right recognized consistently by the United States Supreme Court since the decision in *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council*, 425 *U.S.* 748, 96 *S.Ct.* 1817, 48 *L.Ed.*2d 346 (1976).

---

[3] The overbreadth doctrine does not apply to commercial speech. *Town Tobacconist v. Kimmelman,* 94 *N.J.* 85, 126, 462 *A.*2d 573 (1983).

> Advertising, however tasteless and excessive it sometimes may seem, is nonetheless dissemination of information as to who is producing and selling what product, for what reason, and at what price. So long as we preserve a predominantly free enterprise economy, the allocation of our resources in large measure will be made through numerous private economic decisions. It is a matter of public interest that those decisions, in the aggregate, be intelligent and well informed. To this end, the free flow of commercial information is indispensable.
>
> [*Id.* at 765, 96 *S.Ct.* at 1827, 48 *L.Ed.*2d at 360.]

However, while commercial speech is protected speech, it can be regulated as to time, place or manner. Content-neutral restrictions of that kind are not subject to higher constitutional standards of protection "provided that they are justified without reference to the content of the regulated speech, that they serve a significant governmental interest, and that in so doing they leave open ample alternative channels for communication of the information." *Id.* at 771, 96 *S.Ct.* at 1830, 48 *L.Ed.*2d at 364. *See also, Bates v. State Bar of Arizona,* 433 *U.S.* 350, 97 *S.Ct.* 2691, 53 *L.Ed.*2d 810 (1977); *Linmark Associates, Inc. v. Willingboro,* 431 *U.S.* 85, 97 *S.Ct.* 1614, 52 *L.Ed.*2d 155 (1977).

If content is actually restricted, a four-part analysis has developed in which the court must determine whether the expression is protected by the First Amendment, specifically, does it concern lawful activity and is it non-misleading. Next, the court must determine whether the asserted governmental interest is substantial. If both inquiries are positive, the court must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest. *Central Hudson Gas & Electric Corp. v. Public Service Commission,* 447 *U.S.* 557, 566, 100 *S.Ct.* 2343, 2351, 65 *L.Ed.*2d 341, 351 (1980).

The Supreme Court has acknowledged that certain forms of advertising (there, billboards) combine communicative and non-communicative aspects of commercial speech. *Metromedia, Inc. v. City of San Diego,* 453 *U.S.* 490, 101 *S.Ct.* 2882, 69 *L.Ed.*2d 800 (1981). "[G]overnment has legitimate interests in controlling the noncommunicative aspects of the medium, but the First and Fourteenth Amendments foreclose a similar interest in controlling

the communicative aspects." *Id.* at 502, 101 *S.Ct.* at 2890, 69 *L.Ed.*2d at 811. A restriction that is based solely upon a manner of communication does not impair the freedom of expression. It is a content-neutral restriction only with a mere incidental burden on speech. *See, City of Lakewood v. Colfax Unlimited Ass'n, Inc.,* 634 *P.*2d 52, 63 (Colo.1981).

Although defendants argue that the ban on neon lighting combines commercial speech restrictions, the ordinance itself is content-neutral as it bans not the words but only the *illumination* of everything (pictures, displays, windows, words) by neon. Any impact on content is merely incidental to the purpose of controlling lighting. Therefore, the test applicable to reviewing the validity of Long Hill Township's ordinance is the three-part test of the *Virginia State Board of Pharmacy* case. Specifically, the issues are whether the restrictions are justified without reference to content; whether the restrictions serve a significant government interest; and whether the restrictions leave open ample alternative channels for communication of the information.

■ As to the first issue, the court finds that the restrictions are justified without reference to content. The ban on neon is to any sign or display in a form of illumination only. As stated on the record, anything can be made of or displayed as neon. It just cannot be turned on. The regulation does not affect what is being advertised.

■ As to the third issue, there are ample alternative channels for communication of the information. Other forms of lighting are available. Mr. Tobia suggested other forms which would be in compliance with the ordinance. The Defendants have not shown that using another type of lighting is unduly burdensome or actually harmful to their businesses. They would rather use neon, but alternative methods are available in the ordinance.

■ It is the second prong of the *Virginia State Board of Pharmacy* test—whether the ban on neon serves a significant governmental interest—that requires further analysis.

Courts have acknowledged that advancement of a town's aesthetic interests is a valid justification for regulation of commercial activity. A town can act to minimize the presence of certain structures, to regulate lighting, or to restrict size and number of signs or structures.

> Such aesthetic judgments are necessarily subjective, defying objective valuation, and for that reason must be carefully scrutinized to determine if they are only a public rationalization of an impermissible purpose. If there is no ulterior motive for the suppression of a certain form of speech, the court cannot reject a legislative judgment.
>
> [*Metromedia, supra*, 453 *U.S.* at 510, 101 *S.Ct.* at 2894, 69 *L.Ed.*2d at 816–17.[4]]

A municipality has the right to make choices, to value one kind or method of communication over another, to emphasize one interest over another, to be under inclusive or to make apparent incongruous distinctions. If the government draws an ordinance which meets its interests and directly advances the substantial government interest, it will pass constitutional muster. *Id.* at 512, 101 *S.Ct.* at 2882, 69 *L.Ed.*2d at 818.

In New Jersey, the same guidance was given to municipalities in *State v. Miller*, 83 *N.J.* 402, 414–416, 416 *A.*2d 821 (1980). The municipality must articulate a tangible, specific objective to restrictions on signs. Indeed, the "preservation of aesthetics and property values is a legitimate end for a municipal zoning ordinance." *Id.* at 415, 416 *A.*2d 821. However, the municipality must demonstrate more than a mere desire to preserve property values. "It must show that the particular restrictions on signs in fact relate to the stated goal." *Ibid.* Limitations as to size, set-back, and number of signs are permissible if they "serve a legitimate

---

4 The dissenting opinion of Justice Rehnquist is more blunt:

> Nothing in my experience on the bench has led me to believe that a judge is in any better position than a city or county commission to make decisions in an area such as aesthetics. Therefore, little can be gained in the area of constitutional law, and much lost in the process of democratic decision making, by allowing individual judges in city after city to second-guess such legislative or administrative determinations.
>
> [*Metromedia Inc. v. City of San Diego*, 453 *U.S.* 490, 570, 101 *S.Ct.* 2882, 2925, 69 *L.Ed.*2d 800, 854–55 (1981) (Rehnquist, J., dissenting).]

government interest and [are] tied to the uses permitted in that zone." *Id.* at 416–17, 416 *A.*2d 821. *See also, e.g., Capitol Movies, Inc. v. City of Passaic,* 194 *N.J.Super.* 298, 303, 476 *A.*2d 869 (App.Div.1984); *State v. Malcolm Konner Chevrolet,* 226 *N.J.Super.* 692, 696–97, 545 *A.*2d 275 (Law Div.1988); *North Jersey Newspapers Co. v. Borough of Kenilworth,* 254 *N.J.Super.* 166, 169, 603 *A.*2d 124 (Ch.Div.1991).

Certainly, it is for Long Hill to determine that it should be beautiful and should maintain a non-highway commercial appearance. This court is mindful of the principle that legislative enactments are presumed to be valid and the burden to prove invalidity is a heavy one. Municipal ordinances enjoy this presumption of validity. Indeed, "courts will readily impute a proper governmental purpose or interest as the object to be served by the enactment and, if need be, infer an adequate factual basis to support legislative regulations, even in the absence of particular purposes or specific findings being expressed by the lawmakers." *Bell v. Stafford Township,* 110 *N.J.* 384, 394, 541 *A.*2d 692 (1988). However, there must be shown a factual basis for a particular regulatory scheme, namely, a reason for a total municipal-wide ban. A record cannot be devoid of evidence of how a ban advances the interest of aesthetics. *Id.* at 396–397, 541 *A.*2d 692. This record is.

The record is devoid of evidence, facts or analysis why the mere existence of neon is offensive to that goal. There is no evidence that there are unusual problems in the use of neon that cannot otherwise be regulated as other forms of lighting, specifically, as to degree of illumination; amount of light used within a given space or size of structure; direction of the light; times when the light may be used; or number of lights used on the interior of the store. Mr. Tobia's testimony was purely conclusory, with no factual or explanatory basis why neon *in and of itself* cannot otherwise be regulated, as other forms of illumination, to meet the aesthetic standard for the Township.

It is apparent that the appearance of the commercial district may be enhanced by limiting forms of lighting, but it is *not* apparent as a matter of experience—or of fact—that a complete elimination of one form of lighting has any impact on the undesirable "highway" look of the town. There is no evidence that neon is, in and of itself, inconsistent with careful design or tasteful presentation of advertisements, the general goal of aesthetic restrictions. In fact, Mr. Tobia acknowledged that electronically lit gasoline station signs "very well may" give an appearance of highway commercial signage; that "brightly lighted signs" or signs "thirty to forty feet high" or "massive signs in terms of area" may give that appearance. Indeed, even the illuminated signs allowable under the ordinance could constitute the look of a highway commercial zone. "It all depends," he states. If it all depends, then it can otherwise be regulated, rather than banned.

This court has reviewed decisions throughout the country which uphold or strike down zoning restrictions against the use of certain types of illumination. *See generally, Validity and Construction of Zoning Regulations Relating to Illuminated Signs,* 30 *A.L.R.*5th 549 (1995). What is consistent in every case is a reliance on evidence that a particular restriction has a direct, specific negative impact upon the aesthetic goals of the enactment.

For example, in *Asselin v. Town of Conway,* 137 *N.H.* 368, 628 *A.*2d 247 (1993), the New Hampshire Supreme Court upheld an ordinance that prohibited internally lit signs. An expert testified that internally illuminated signs appear as disconnected squares of light with an overall effect of creating a visual block of the natural environment of the mountain town, and appear to bob around through windshields. "The evidence supports a finding that the restriction on internally lighted signs is rationally related to the town's legitimate, aesthetic goals of preserving vistas, discouraging development that competes with the natural environment, and promoting the character of a 'country community'." *Id.* 628 *A.*2d at 250–51. *See also Central Advertising Co. v. Ann Arbor,* 391 *Mich.* 533, 218 *N.W.*2d 27 (1974); *Greenburgh v. General Outdoor*

*Advertising Co.,* 109 *N.Y.S.*2d 826 (Sup.Ct.1951); *Schaffer v. Omaha,* 197 *Neb.* 328, 248 *N.W.*2d 764 (1977); *Hilton Head Island v. Fine Liquors, Ltd.,* 302 *S.C.* 550, 397 *S.E.*2d 662 (1990).

In light of these cases and principles of law, although the Township has enacted an ordinance that regulates time, place and manner of commercial speech in response to a recognized and valid interest in aesthetics, *and* this ordinance is justified without reference to the content of commercial speech, the Township has failed to show that a municipal-wide ban on neon "serves that significant government interest." The record is devoid of evidence that establishes that neon in and of itself—without other less restrictive methods to regulate its use, such as through size, degree of illumination or brightness, or number—improperly contributes to the unwanted "highway" commercial look.

This court is not seeking to impose its own notion of beauty on the Township; it is within the authority of the governing body to make that judgment. However, before deferring to a town's judgment, the court must be convinced that the government body is seriously and comprehensively addressing aesthetic concerns, *that is,* the court must require evidence that the government's choice in the manner of addressing advertising is tied to environmental purposes and not arbitrary to commercial purposes. On the basis of the record that is devoid of facts of the nexus between the aesthetics purposes and a total ban of neon, the court holds Long Hill Township's ordinance to be an impermissible restriction on commercial advertising.

Defendants' convictions are reversed.