636 A.2d 96

MACEDONIAN ORTHODOX CHURCH, PLAINTIFF–RESPONDENT, v. PLANNING BOARD OF THE TOWNSHIP OF RANDOLPH, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued November 30, 1993—Decided January 13, 1994.

Before Judges PETRELLA, BAIME and CONLEY.

*Edward J. Buzak* argued the cause for appellant (*Mr. Buzak* and *Robert B. Campbell,* on the brief).

*Walter J. Tencza* argued the cause for respondent.

The opinion of the court was delivered by

PETRELLA, P.J.A.D.

The Planning Board of the Township of Randolph (Planning Board) appeals from the judgment of the Law Division in a suit in lieu of prerogative writs setting aside the denial of a conditional use variance to the Macedonian Orthodox Church (Church). The Church sought approval to construct on its property an all-purpose building that was more than twice the size and in a different location from a proposed smaller, auditorium-type building, approved thirteen years earlier.

On appeal the Board argues: (1) it correctly evaluated the application under the township's conditional use ordinance; (2) plaintiff's status as a church is immaterial to review of its application; (3) its decision is supported by the record, is presumed correct, and is, neither arbitrary, unreasonable or capricious and should be sustained.

The Church owns certain property on the southeastern side of Center Grove Road in what's known as the RLD–3 single-family low density residential zone. In 1978, the Church was constructed under the 1978 conditional use approval. A rectory, driveways, and parking lots were completed in accordance with the approved site plan. Construction of the auditorium and the connecting hallway to the Church was never undertaken due to financial difficulty.

Many years later, the Church determined to construct an all-purpose building and additional parking on the site. The initial plans called for a 12,800 square-foot community hall that would seat 500 people. The building was to have a full basement and a small kitchen, as well. In contrast, the 1978 approval had permitted a 5,000 square-foot recreation hall, and the entire project was to be served by only fifty parking spaces. In addition, the hall was proposed to be located in a different spot on the site than that which was approved in 1978. As a result of the enlarged specifications, certain environmental constraints on the site became an issue.

There was some question as to whether a parking variance was needed and whether a "new" conditional use approval had to be obtained. At a February 11, 1991 work session, the Church's engineer acknowledged that the parking lot would probably be the major source of contention with regard to the new application. The Church submitted a variance application to the Randolph Township Board of Adjustment. It was determined that the parking variance could be eliminated because the Church could comply with the township's parking requirements without a variance. Hence, that application was abandoned and the Church

reduced the size of its proposed building to 11,200 square feet and met the parking requirement of at least 142 spaces. The proposed structure would comply with all the bulk requirements of the RLD-3 zone.

The proposed 11,200 square-foot community hall and 143 parking spaces was designed to accommodate the Church's 100 family congregation. The all-purpose building was to accommodate christenings, weddings, and various youth group activities, as well as special celebrations on New Year's, Easter, and Christmas, the Church's three biggest holidays. It was represented that no one but Church members would be able to utilize the community hall.

The relocation of the structure prompted concerns about whether the Church's DEP[1] permits for the previously approved plan were still viable. The Church contacted the DEPE and obtained "approval for grandfathering based upon its [1978] approved plan." A letter from the township's engineer explained that "so long as the original approval is not voided, it is exempt from the Wetlands Regulations even if the project undergoes a major redesign."[2] The Church's position was that there had been no substantial deviation from the 1978 site plan approval, which, for wetlands permit purposes, had been "perfected" by virtue of the construction of the Church structure.

Another topic of the hearings included various complaints from neighboring property owners about the Church's prior use of the site, specifically the debris, noise, altercations and trespassing which accompanied the social use of the Church site for picnics and other gatherings. The Church acknowledged that the facility

---

[1] The New Jersey Department of Environmental Protection, now the Department of Environmental Protection and Energy (DEPE), effective August 19, 1991, *N.J.S.A.* 13:1D–32.

[2] The grandfathering eliminated the need for buffer areas. The township engineer was also informed that "the D.E.P. is not happy with this provision of the law and is working to change it but that is the way the law is worded at this time."

had not always been well maintained in the past. However, it sought to minimize those concerns by explaining that at present the Randolph Township facility is a "part-time Church," in that the congregation has another church facility in Passaic County that is in the process of being sold. Since the Randolph site is then to become the congregation's main facility, the Church reasoned it can be expected to take better care of the Randolph site. In addition, the noise factor was anticipated to be eliminated with the new building since social functions would be conducted indoors.

The Planning Board determined that since the Church's amendment to the prior conditional use approval entailed substantial changes, the new application would again have to meet the standards set forth in the conditional use ordinance. To that end, a significant portion of the public hearings was dedicated to consideration of whether the application would "substantially impair the present or future use and enjoyment of surrounding properties" or "substantially impair the character of the surrounding area."

The Planning Board's determination was based on the fact that the DEPE's wetlands permit determination was made without having reviewed the Church's amended plans of "April 18, 1991 which shows the enlarged parking lot and the proximity of that parking lot to the wetlands areas." However, the Church's exemption resulted through the grandfathering accorded its 1978 approval.

In addition, the Church argues that its exempt status from the Wetlands Protection Act, *N.J.S.A.* 13:9B–4(d), suffices to address any and all of the environmental concerns the Planning Board may raise. In a letter dated December 15, 1989, the DEPE, Division of Coastal Resources referred to the exemption provisions of the Administrative Code which have been promulgated to implement the Freshwater Wetlands Protection Act, *N.J.A.C.* 7:7A–2.7(d)(1), as follows:

[a]ll of the structures, lots, road improvements, and other appurtenant development depicted on, . . . [the Church's conditional use application], dated June 9, 1978, and

last revised July 5, 1978, are exempt from the requirement of obtaining a NJDEPE Freshwater Wetlands or Open Water Fill Permit subject to the following limitations ...

One of the limitations set forth within that letter reads:

3. Pursuant to *N.J.A.C.* 7:7A–2.7(e), this exemption shall be considered null and void if significant changes are made to the aforementioned plans. A significant change shall be deemed to have been made if, under the Municipal Land Use Law (*N.J.S.A.* 40:55D–1 *et seq.*) the change would void the preliminary approval and would require the submittal or approval of a new or amended application to the local review agency. This exemption will be effective for as long as the site plan or subdivision approval remains effective.

A memorandum dated June 11, 1990 from the township engineer, to the Zoning Board of Adjustment indicated that he had contacted the DEPE and had been advised that so long as the original approval is not voided it is exempt from the wetlands regulations even if the project undergoes a major redesign. Based on this, the Church concluded that its 1991 proposal was grandfathered under its original 1978 approval.

The issue comes down to whether the Church's 1991 application for the all-purpose building needed conditional use approval, as required by the Planning Board, as well as site plan approval. The Church contends, and the trial court agreed, that the proper standard of review was only for site-plan approval.

Section 33–23(a) of the Randolph Township Ordinance provides:

Any church, library, school, college, governmental use, hospital for humans, nursing home or public utility facility may be permitted as a conditional use in any of the zone districts created by this Chapter.... Any use permitted under this section shall meet all yard, height and area requirements for the zone district in which it is located and off street parking and landscaping requirements shall be met as required by Article 8 of this Chapter....

Randolph Township Ordinance Section 33–38 governs conditional uses and provides:

The Planning Board may approve a conditional use only if it finds that the use meets all the requirements of this chapter, does not substantially impair the present or future use and enjoyment of surrounding properties and does not substantially impair the character of the surrounding area. In reviewing any proposed conditional use, the Planning Board shall consider the impact of any additional noise, traffic, odors, air pollution and similar factors on the surrounding properties and area: the relative accessibility of the lot in terms of transportation and circulation patterns, the environmental factors, the visual and aesthetic im-

pacts, the adequacy of existing and proposed utility and drainage systems, the public interest in the existence of such use and the relative availability of other suitable sites for such use, the sufficiency of related uses and services, the adequacy of proposed barriers and safety devices, and such other factors as may be relevant in relation to the proposed use and the area in question.

The Church has cited various First Amendment cases addressing the Freedom of Religion and Establishment Clause.[3] For example, *St. John's Evangelical Lutheran Church v. Hoboken*, 195 *N.J.Super.* 414, 479 *A.*2d 935 (L.Div.1983), is cited for the proposition that "a municipality may not exercise its zoning power in violation of the fundamental tenets of the First Amendment," *id.* at 419, 479 *A.*2d 935, particularly where religious institutions are involved.

The Church relies on *St. John's, supra*, 195 *N.J.Super.* 414, 479 *A.*2d 935, in arguing for special treatment. The trial court in that case determined that sheltering the homeless fell within the protection of the free exercise of religion clause. *Id.* at 420, 479 *A.*2d 935. Under Hoboken's zoning ordinances, the court determined that St. John's homeless shelter on the church's property, qualified as an accessory use "customarily incident[al] to [a church's] principal use." *Id.* at 417, 479 *A.*2d 935. The court pointed out that, in the past, such things as day care centers, orphanages, schools, and even drug counseling centers had qualified as "religious uses." *Id.* at 420–421, 479 *A.*2d 935. Thus, the church was permitted to continue the operation of its homeless shelter in the church's basement pending a final hearing. *Id.* at 421, 479 *A.*2d 935. However, the church was still required to comply with the town's other health and safety ordinances. *Id.* at 421, 479 *A.*2d 935. As a result, the church was forced to comply with the twenty-person occupancy limitation required by the town's ordinance. *Id.*

The Church also relies on *Burlington Assem. of God v. Zoning Board of Adjustment Township of Florence*, 238 *N.J.Super.* 634, 570 *A.*2d 495 (L.Div.1989), in support of its position that municipal

---

[3] *U.S. Const.,* amend. I.

zoning regulations which cripple or seriously inconvenience a religious institution are rarely upheld. *Id.* at 637, 570 *A.*2d 495. In *Burlington*, the court held that the municipality must grant the Church a variance to erect radio towers needed to operate a proposed radio station. *Id.* at 636, 570 *A.*2d 495. The Church argued that an ordinance which impinged on freedom of religion must serve a significant governmental interest in the least restrictive means available. *Id.* *See also Farhi v. Deal Borough Commissioners,* 204 *N.J.Super.* 575, 584–585, 499 *A.*2d 559 (L.Div. 1985) (municipal ordinance prohibiting religious services in residences deemed unduly burdensome). It also contended that by virtue of the First Amendment, religious institutions enjoyed a preferred position, entitling them to a more flexible approach. *Burlington, supra,* 238 *N.J.Super.* at 639, 570 *A.*2d 495 (citing *State v. Cameron,* 100 *N.J.* 586, 606–607, 498 *A.*2d 1217 (1985)). The cases relied on by the Church, however, do not address the issue of whether the Planning Board must re-evaluate the Church's application under the conditional use ordinance given the present circumstances.

The Church's reliance on the First Amendment's guarantee of freedom of religion and the establishment clause as support for its position that the Planning Board acted arbitrarily in denying approval of the all-purpose building plans is inapposite. Here, the Church's status as a religious institution is essentially irrelevant. The Church building exists. Furthermore, the conditional use ordinance is a completely neutral ordinance, not aimed at discriminating against religious institutions, nor at curtailing religious exercise. *U.S. Const.* amend. I.; *St. John's, supra,* 195 *N.J.Super.* at 419, 479 *A.*2d 935.

 The First Amendment guarantee of religious freedom does protect against more than direct proscription of religious practices. State action that unduly burdens the free exercise of

religion violates the First Amendment.[4] Even facially neutral legislation may give rise to a burden on religion if, as applied to a particular religious sect, it forces individuals to choose between abandoning their religious beliefs or sacrificing an important governmental benefit.

■ However, not all burdens on religions are unconstitutional. Legislation that impedes the exercise of religion may be constitutional if no less restrictive means exists to achieve some overriding state interest. *N.J. Bd. of Higher Ed. v. Shelton College,* 90 *N.J.* 470, 482–483, 448 *A.*2d 988 (1982). In *Shelton* two·provisions of New Jersey's education law, *N.J.S.A.* 18A:68–3 and *N.J.S.A.* 18A:68–6, which prohibit conferring baccalaureate degrees by any institution that has not secured a license from the State Board of Higher Education were held not to abridge rights guaranteed by the free exercise of religion clause of the First Amendment. In reaching that result, the Court observed that the Clause "requires that a law reflect a secular legislative purpose, have a primary effect that neither advances nor inhibits religion, and avoid excessive entanglement with religion." 90 *N.J.* at 487, 448 *A.*2d 988.

■ *See also Allendale Congregation of Jehovah's Witnesses v. Grosman,* 30 *N.J.* 273, 278, 152 *A.*2d 569 (1959), *app. dism.,* 361 *U.S.* 536, 80 *S.Ct.* 587, 4 *L.Ed.*2d 538 (1960) ("off-street parking requirements made indiscriminately applicable to all buildings where substantial numbers of people are likely to gather ... are well designed to promote the public safety and general welfare by lessening 'congestion in the streets' "). A municipality can exercise its general police powers to deal with problems of traffic, parking, and the like so that the character of the residential neighborhood is preserved. *State v. Cameron, supra,* 100 *N.J.* at 600, 498 *A.*2d 1217; *Lakewood, Ohio Congregation of Jehovah's Witnesses, Inc. v. City of Lakewood, Ohio,* 699 *F.*2d 303, 305 (6th

---

[4] For instance, the majority view is that churches cannot be totally excluded from residential zones. *See* Annotation, "Zoning Regulations–Churches," 74 *A.L.R.*2d 377, 380–381 (1960).

Cir.), *cert. denied*, 464 *U.S.* 815, 104 *S.Ct.* 72, 78 *L.Ed.*2d 85 (1983) (whether ordinance should be subject to "compelling interest" or "rational basis" scrutiny "depends on whether the ordinance in fact infringes the Congregation's right to free exercise of religion"); *Jehovah's Witnesses v. Woolwich Tp.*, 223 *N.J.Super.* 55, 60, 537 *A.*2d 1336 (App.Div.1988) ("the court must make a thorough exploration and a careful evaluation of the facts bearing on the competing religious and governmental interests").

█ It is also axiomatic that municipal boards, *i.e.*, planning boards and boards of adjustment, have considerable authority and latitude in reviewing the applications before them, and their decisions are presumptively valid. *Sica v. Board of Adjustment of Township of Wall*, 127 *N.J.* 152, 166, 603 *A.*2d 30 (1992); *Kramer v. Board of Adjustment, Sea Girt*, 45 *N.J.* 268, 296, 212 *A.*2d 153 (1965). It is presumed that they act "fairly and with proper motives and for valid reasons." *Id.* (citing *Kramer, supra*, 45 *N.J.* at 296, 212 *A.*2d 153).

█ In the present case the proposed all-purpose building in the Church's 1991 application differed substantially from that approved in its 1978 application. The all-purpose building approved in 1978 was approximately 5,000 square feet large and provided for a total of fifty parking spaces. By contrast, the modified 1991 proposed building was 11,200 square feet, requiring a total of 142 parking spaces. Moreover, the 1991 building was to be built on the northerly portion of the Church property, whereas the proposed 1978 building was to be at the southerly portion. Clearly, there was a substantial increase in the proposed building size from that of the approved 1978 building and other significant changes.

Additionally, there was testimony from individuals occupying neighboring properties that the Church had operated in a disorderly fashion in the past. For example, loud music and disorderly conduct on the Church property had resulted in the police being called on several instances. Additionally, one neighbor com-

plained of trash being left out in the open and spilling over onto her property on several occasions.

Furthermore, the Planning Board denied construction of the amended proposed all-purpose building due to various concerns. The Planning Board, however, indicated that it would not oppose the construction of an all-purpose building such as the one originally approved in its 1978 application. Thus, the Planning Board did not deny the Church an opportunity to engage in social and other religious-oriented events, but is merely placing constraints on the additional building's size and location. As such, the Planning Board's actions are supported by the court's ruling in *St. John's, supra,* 195 *N.J.Super.* 414, 479 *A.*2d 935.

In the present case, the judge's reversal of the Planning Board's denial of the conditional use application was based on a finding that the Planning Board acted "arbitrarily, unreasonably and capriciously," and was based on his belief that the Planning Board applied the wrong standard in reviewing the Church's application anew under the conditional use ordinance. However, the judge was incorrect in determining that the Planning Board's review of the Church's application should have been limited to site plan approval only. Based on the changes in the proposal, the Planning Board acted within the bounds of its discretion in deciding to review the application anew under the conditional use ordinance. Thus, a reversal is required of the Law Division's determination that the Planning Board applied the wrong standards and the wrong criteria in reviewing the Church's application. The Planning Board used the appropriate standard and the Law Division applied the wrong standard of review in its analysis of the Planning Board determination.

Since an improper standard was the basis of the reversal, the judge never reached the issue of whether there was sufficient credible evidence in the record to support the Planning Board's denial of the conditional use application. Hence a remand is required for the judge to reconsider the Planning Board's action in accordance with the appropriate standard of review.

We reverse and remand to the Law Division for reconsideration of the Planning Board's denial of the Church's conditional use application in accordance herewith, using the appropriate standard of review.