744 A.2d 222 (2000)
Thomas DAVIS, Harry Ryan, Joseph Goodwin, Robert Helm, Elaine Helm and Somers Point Food Services, Inc., a New Jersey Corporation, Plaintiffs-Appellants,
v.
PLANNING BOARD OF the CITY OF SOMERS POINT, McDonald's Corporation, Leon Freeman, Deceased, and Judith Brahin, Executrix of the Estate of Leon Freeman, Deceased, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued October 12, 1999.
Decided January 31, 2000.
*223 Kevin J. Thornton, Atlantic City, for plaintiffs-appellants (Horn, Goldberg, Gorny, Plackter, Weiss and Perskie, attorneys; Mr. Thornton, of counsel and on the brief).
Daryl F. Todd, Sr., Linwood, for defendant-respondent Planning Board of the City of Somers Point (Todd & Gemmel, attorneys; Mr. Todd, on the brief).
Stephen R. Nehmad, Atlantic City, for defendants-respondents McDonald's Corporation, Estate of Leon Freeman and Judith Brahin, Executrix (Perskie, Nehmad & Perillo, attorneys; Mr. Nehmad and Richard F. DeLucry, on the brief).
Before Judges HAVEY, A.A. RODRIGUEZ and LINTNER.
The opinion of the court was delivered by RODRIGUEZ, A.A., J.A.D.
Since 1990, McDonald's Corporation, along with the Estate of Leon Freeman and its executrix Judith Brahin (collectively "McDonald's"), has sought to build and operate a fast-food restaurant in Somers Point at the intersection of New Road (Route 9) and Chapman Boulevard. Plaintiffs have opposed the project from the beginning. In this appeal, plaintiffs contend that changes made to the project after preliminary approval of a Major Site Plan are significant and/or substantial and therefore, the Somers Point Planning Board (Board) was deprived of jurisdiction to consider final site plan approval. Based on the circumstances presented here, we affirm because the changes are not significant or substantial.
On January 16, 1991, the Board granted preliminary site plan approval and several variances and waivers after a public hearing held over five sessions. The project at that time called for an eighty-nine seat fast food restaurant, housed in a 4,200 sq. ft. building, with parking for fifty-five vehicles. The planned restaurant did not have a drive-through window. Access to the property would be through one entrance and exit driveway onto New Road (Route 9) and another on Chapman Boulevard.
Nineteen months later, the Permit Extension Act, N.J.S.A. 40:55D-130 to -136, became effective. This statute automatically extended McDonald's' preliminary site plan approval until December 31, 1996, due to a declared statewide economic emergency.[1] In January 1997, McDonald's sought an extension of its preliminary site plan approval pursuant to N.J.S.A. 40:55D-49(c). The Board granted a one-year extension until December 31, 1997.
On August 6, 1997, McDonald's filed an application for final site plan approval. Just prior to filing its application, McDonald's, through its counsel, wrote a letter to the Board's attorney advising that there were "minor changes to the site plan." Based on market forces, McDonald's decided to build a smaller restaurant. The size of the building was reduced to 3,200 square feet. The number of seats was reduced to eighty-four and the number of parking spaces to thirty-seven. The building's length was reduced by 17'8" and its height by 3'4". In addition, access changes were made to meet the requirements of the Department of Transportation (DOT). The driveway from New Road (Route 9) became an entrance only, and a second exit driveway onto Chapman Boulevard was added.
The Board scheduled a hearing. Plaintiffs appeared and objected. Plaintiffs' counsel argued that the Board had no jurisdiction to consider the final site plan *224 because: (1) it was not the project as was approved in 1991; (2) based on the changes this was a new project requiring a new preliminary site plan approval; and, (3) McDonald's failed to supply proper notice to property owners located within 200 feet of the project and failed to provide proper notice of a de facto new major site plan application which would have required conditional use approval. The Board rejected these arguments and determined that the changes were not material or substantial and thus, it had jurisdiction to review the final site plan application. After a substantive review, the Board voted to grant final site plan approval.
The Board scheduled a meeting to adopt the appropriate resolution. Plaintiffs' counsel was advised that the meeting would take place on October 15, 1997. This meeting was subsequently canceled. Despite this, the Board called an emergency meeting on October 15 and approved the resolution. Thereafter and because the Board had apparently failed to comply with the Open Public Meeting Act, N.J.S.A. 10:4-6 to -21, it re-adopted the resolution at its November 17, 1997 regular meeting.
Plaintiffs filed an action in lieu of prerogative writs to challenge the Board's actions on December 8, 1997. McDonald's moved for a dismissal of the complaint arguing that it was filed more than forty-five days after the October 15, 1997 adoption of the resolution. The judge dismissed the complaint with prejudice, finding that the complaint was untimely filed. Plaintiffs now appeal the dismissal of their complaint.
We disagree with the trial judge's conclusion that the complaint was untimely filed. We affirm nevertheless. As to the timeliness of the filing of the complaint, we note that an action in lieu of prerogative writs to review a determination of a planning board must be initiated within forty-five days after the publication of an appropriate notice in the official newspaper of or a newspaper of general circulation in the municipality. R. 4:69-6(b)(3). Here, the complaint was filed within forty-five days of the adoption of the resolution on November 17, 1997 and the publication of the Board's decision on November 26, 1997. It is of no moment that the Board voted on a similar resolution on October 15, 1997. The Open Public Meeting Act permits ratification of an arguably voidable act, provided that the violation was a technical, rather than substantive defect. See N.J.S.A. 10:4-15. The date of the publication of the notice of the Board's re-adoption of the resolution is when the forty-five day period began to run. Accordingly, plaintiffs' complaint was not procedurally barred.
Plaintiffs' first substantive contention is that the Board lacked jurisdiction to consider the final site plan application because there were substantial and material changes from the preliminary site plan. We disagree. An overview of the Major Site Plan approval process is helpful. First, a developer must seek preliminary site plan approval. N.J.S.A. 40:55D-46a requires that a developer must submit "a site plan and such other information as is reasonably necessary to make an informed decision as to whether the requirements necessary for preliminary site plan approval have been met." This section only requires that the plan and other documents be in "tentative form for discussion purposes" and that "preliminary" architectural plans and elevations are sufficient. N.J.S.A. 40:55D-46a.
Preliminary approval of a site plan confers certain rights upon an applicant. N.J.S.A. 40:55D-49. An applicant is protected from subsequent zoning changes for a specific period. The applicant is entitled to submit an application for final approval during that same time. And an extension of preliminary approval not to exceed two years is permitted. Ibid.; see Palatine I v. Planning Bd. of Montville Township, 133 N.J. 546, 553, 628 A.2d 321 (1993).
*225 After receiving preliminary approval, the developer applies for final site plan approval. N.J.S.A. 40:55-50a states that a "planning board shall grant final approval if the detailed drawings, specifications and estimates of the application for final approval conform to the standards established by ordinance for final approval, [and] the conditions of preliminary approval." Modifications from the preliminary plans to the final plans can be expected. In Toll Bros. Inc. v. Township of Greenwich, 244 N.J.Super. 514, 519-20, 582 A.2d 1276 (App.Div.1990) (discussing N.J.S.A. 40:55D-50a), we noted that a developer can defer preparing detailed drawings and specifications until the application for final approval. Additionally, the Supreme Court, in interpreting the Municipal Planning Act of 1953 (the MLUL's predecessor[2]), noted that certain specifications and improvements required of developers "were not definitively determined as of the date of tentative approval." Pennyton Homes, Inc. v. Planning Bd. of Stanhope, 41 N.J. 578, 584, 197 A.2d 870 (1964).
Nonetheless, substantial changes may require the developer to seek preliminary site approval again. In Macedonian Orthodox Church v. Planning Bd. of Randolph Tp., 269 N.J.Super. 562, 636 A.2d 96 (App.Div.1994), a church was granted site plan approval in 1978 to build its facilities, which included a proposed 5,000 sq. ft. recreation hall. Id. at 565, 636 A.2d 96. Thirteen years later, the church submitted an application for approval to build a 11,200 sq. ft. building with double the parking on a completely different location on the site. Id. at 566-67, 636 A.2d 96. The planning board in effect decided that because there were substantial changes to the site plan, the church was required to file a new application and seek a new site plan as well as conditional use approval. Id. at 567, 636 A.2d 96. The Law Division reversed the planning board. We held that the planning board's actions were not arbitrary and capricious because "there was a substantial increase in the proposed building size from that of the approved 1978 building and other significant changes." Id. at 572, 636 A.2d 96.
The holding in Macedonian Orthodox Church has been interpreted by William M. Cox in his treatise on Land Use Administration. He states:
[W]here an owner, having received a conditional use permit and site plan approval does not act on it for a long period of time and later comes before the board with a significantly revised and expanded plan, the board is correct in considering that a new application for both conditional use and site plan approval must be submitted.
[William M. Cox, New Jersey Zoning and Land Use Administration, § 15-5.2 at 310 (1999) ].
Mr. Cox instructs that, "It seems clear that approval of a substantially revised site plan constitutes simultaneous abandonment of an earlier plan." Ibid. There is no authority that defines what changes may be deemed significant or substantial revision. Thus, the "significant or substantial revision" standard must be illustrated on a case-by-case basis. Here, the Board determined that the changes were minor.
The standard of review used by courts in any challenge to a decision by a planning or zoning board is very limited. A board's decision should be sustained if it "comports with the statutory criteria and is founded on adequate evidence." Burbridge v. Township of Mine Hill, 117 N.J. 376, 385, 568 A.2d 527 (1990). Thus, if a court concludes that "there is [sufficient] support in the record, approval will not be *226 deemed arbitrary or capricious." Ibid.; see also Jayber, Inc. v. Municipal Council, 238 N.J.Super. 165, 173, 569 A.2d 304 (App.Div.1990)(finding that a court should defer unless a decision is "so arbitrary, unreasonable or capricious as to amount to an abuse of discretion").
Applying that standard here, we conclude that the Law Division should have upheld the Board's determination that it had jurisdiction to review the final site plan because the changes were not a significant or substantial revision of the preliminary site plan. Unquestionably, this project got smaller. The changes to the driveways were mandated by the DOT and were designed to address the Board's concern regarding traffic in the area. The decision to slightly reduce the size of the building (by approximately 1000 sq. ft.) was compelled by technical innovations over a six-year period in the rapidly-developing fast-food industry. The reduction of the building dictated the other changes seen on the final site plan. A reduced need for parking and increased set-backs followed the decrease in size of the building.
For the same reasons, we also conclude that the Law Division should have upheld the Board's final site plan approval. The record supports the Board's decision. R. 2:11-3(e)(1)(D).
Plaintiffs also contend that McDonald's should not have been granted final site approval because the one-year extension was specifically conditioned on there being no revisions from the preliminary site plan. Plaintiffs point to paragraph 6 of the extension resolution as a basis for their argument.
Paragraph 6 stated in its entirety:
This Board finds that, based upon the testimony before it, the advice of its attorney and its knowledge of the situation itself, the applicant's request for a one-year extension is reasonable and fair, supported by law and fact, that no design standards pertaining to the project need revision and that a 1-year extension should be granted.
From our review of this language, we do not discern that the Board imposed, as a condition for extension, that there would be no modifications from the preliminary plan.
Lastly, we wish to comment on the fact that both appellants' and respondents' briefs refer to a matter that is not before us. On December 18, 1997, McDonald's filed an application with the Somers Point Zoning Board of Adjustment seeking a conditional use variance, preliminary and final major site plan approval to build a McDonald's restaurant on the same property but with a drive-through window. After three separate hearings, the Zoning Board of Adjustment granted McDonald's application. Plaintiffs here have filed an action in lieu of prerogative writs that is now pending in the Superior Court, Law Division, Atlantic County (Docket# ATL-L-3354-98). We express no view on the impact of our decision on that pending action.
Accordingly, the dismissal of plaintiffs' complaint is affirmed on the substantive ground that the Board's determination that the changes to the preliminary site plan were not significant or substantial and the Board's approval of the final site plan is supported by the record. We also conclude that there were no conditions in the extension resolution which precluded minor modifications.
NOTES
[1] The purpose of the Permit Extension Act was to drastically reduce "the wholesale abandonment of approvals due to ... unfavorable economic conditions, by tolling the expiration of these approvals until such time as the economy improves, thereby preventing a waste of public and private resources." N.J.S.A. 40:55D-131(j).
[2] The predecessor to the MLUL, the Municipal Planning Act (1953), L.1953, c. 433 (repealed by L. 1975, c. 291) had a two-step approval procedure for subdivisions, which is similar to the preliminary and final site-plan approval in the current statute. The procedure for approval required that the developer first obtain tentative approval, which was to be followed by final approval.