852 A.2d 236

ALAN S. MESZAROS, PLAINTIFF–RESPONDENT, v. PLANNING BOARD OF THE CITY OF SOUTH AMBOY, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted May 5, 2004—Decided July 13, 2004.

Before Judges KING, LINTNER and S.L. REISNER.

*Gordon Berkow,* attorney for appellant.

*Convery, Convery & Shihar,* attorneys for respondent (*Bernard H. Shihar,* of counsel and on the brief).

The opinion of the court was delivered by

KING, P.J.A.D.

The Planning Board of South Amboy (Planning Board) urges a reversal of the Law Division's decision that the respondent, Alan Meszaros, is entitled to conditional use approval to build a two-family dwelling in a single-family residential zone in South Amboy. The Planning Board had denied conditional use approval. Based on the law of conditional uses and the statutory allocation of authority between planning boards and zoning boards, we vacate the decisions of the Planning Board and Law Division and direct Meszaros to pursue a new application before the Zoning Board.

I

This is the procedural history. On April 15, 2002 Meszaros applied for conditional use approval from the Planning Board to build a two-family residence in a single-family residential zone.

After public hearings on May 20, June 26, and July 24, 2002 the Planning Board denied Meszaros' application. On November 7, 2002 Meszaros filed an action in lieu of prerogative writ in the Law Division in Middlesex County, *see R.* 4:69–1, and on December 6, 2002 the Planning Board answered. On June 18, 2003 after a bench trial the Law Division reversed the Planning Board's decision and entered an order to that effect (June 18, 2003 Order). The Law Division remanded the case to the Planning Board to:

adopt a resolution granting [Meszaros'] development application for conditional use approval for a two-family residence with relief pursuant to [*N.J.S.A.* 40:55D–36] together with any reasonable conditions relating to said approval within 45 days of the date hereof[.]

The Law Division retained jurisdiction for objections to any conditions the Board established.

The Planning Board filed a notice of appeal with this court on August 13, 2003. There is no cross-appeal. The Planning Board apparently has taken no action to comply with the June 18, 2003 order pending appeal.

The Planning Board raises the following points for reversal:

*POINT ONE*

THE TRIAL COURT ERRED IN NOT PROPERLY FINDING THAT:

A.  Lot 28.01 is not a separate lot for land use purposes; it is a component of a single property comprised of same and Lots 22.01/22.02.

B.  The Plaintiff did not apply for, advertise for, notice for, or address variances and other relief required in addition to Conditional Use Approval.

C.  The Defendant Board properly denied Plaintiff's Application.

*POINT TWO*

THE PLAINTIFF WAS PROPERLY DENIED RELIEF PURSUANT TO *N.J.S.A.* 40:55D–36.

Because the Law Division's prerogative writ jurisdiction stems from its inherent power and from constitutional imperative, the Law Division can review the facts of the case and make independent findings where necessary. *See* Pressler, *New Jersey Court Rules,* Comment 5 to *R.* 4:69. Still, the role of this court is to determine whether the Board's actions were arbitrary, capricious or unreasonable. Substantial deference is given to the Planning Board's factual findings, but its legal conclusions are

entitled to no special deference. *See ibid.* (citing, *inter alia, Cell v. Zoning Bd. of Adjustment,* 172 *N.J.* 75, 81–82, 796 *A.*2d 247 (2002); *New Brunswick Cellular v. Bd. of Adj.,* 160 *N.J.* 1, 14, 733 *A.*2d 442 (1999)). A denial of a variance is entitled to greater deference than a board's decision to grant a variance. *Ibid.* (citing, *inter alia, Omnipoint v. Bd. of Adjustment,* 337 *N.J.Super.* 398, 416, 767 *A.*2d 488 (App.Div.), *certif. denied* 169 *N.J.* 607, 782 *A.*2d 425 (2001)). If the record of the local agency differs from the resolution memorializing the local agency's action, the record is given controlling effect. *Ibid.* (citing *Fieramosca v. Barnegat Tp.,* 335 *N.J.Super.* 526, 533–534, 762 *A.*2d 1075 (Law Div.2000)).

## II

As this is a review of a bench trial, the following facts are based on available pleadings and the Board and trial records. At issue are three parcels of land in South Amboy. Lots 22.01 and 22.02 are adjacent parcels on State Highway 35. They are in the B–2 highway commercial zone. For years Meszaros has owned these properties. He operates a nightclub on them called the Music Box. For the nightclub, there is a parking lot on the premises.

Behind Lots 22.01 and 22.02 is former Lot 28, zoned single-family residential. Meszaros owned no part of Lot 28 prior to 1980. In 1980, Meszaros and the owner of Lot 28 made an agreement whereby Meszaros would receive a subdivided free-standing 100' by 110' portion of Lot 28. The subdivision application was approved, and Meszaros' portion of Lot 28 became Lot 28.01, still single-family residential. Thus, after 1980, Meszaros possessed Lots 22.01 and 22.02, zoned highway commercial, and Lot 28.01, zoned single-family residential. Lot 28.01 was land-locked. Music Box's parking lot was situated between Lot 28.01 and Route 35.

On April 15, 2002 Meszaros applied for conditional use approval to build a two-family residence on the single-family residential Lot 28.01. He filed his application with the Planning Board, not the

Zoning Board of Adjustment.[1]  He submitted site plans drafted by R.W. Dill, an architect, to illustrate his proposal.  He also gave notice of his application to surrounding property owners.

The conditional use is the successor to the now-defunct "special exception use."  William M. Cox, *New Jersey Zoning and Land Use Administration,* § 17.1, at 419 (Gann 2004).  The Municipal Land Use Law (MLUL) defines a conditional use as:

> a use permitted in a particular zoning district only upon a showing that such use in a specified location will comply with the conditions and standards for the location or operation of such use as contained in the zoning ordinance, and upon the issuance of an authorization therefor by the planning board.
>
> [*N.J.S.A.* 40:55D–3.]

The MLUL also says:

> a.  A zoning ordinance may provide for conditional uses to be granted by the planning board according to definite specifications and standards which shall be clearly set forth with sufficient certainty and definiteness to enable the developer to know their limit and extent.  The planning board shall grant or deny an application for a conditional use within 95 days of submission of a complete application by a developer to the administrative officer, or within such further time as may be consented to by the applicant.
>
> b.  The review by the planning board of a conditional use shall include any required site plan review pursuant to article 6 of this act.  The time period for action by the planning board on conditional uses pursuant to subsection a. of this section shall apply to such site plan review.
>
> [*N.J.S.A.* 40:55D–67a, b.]

In *Coventry Square v. Westwood Zoning Bd. of Adjustment,* 138 *N.J.* 285, 650 *A.*2d 340 (1994), the Supreme Court observed:

> Generally, a conditional use is "suitable to a zoning district but not to every location within that district."  Conditional uses are "uses ordinarily requiring special standards relating to traffic patterns, street access, parking, and the like in order to assure their functional and physical compatibility with the district as a whole and their appropriate integration into the district."
>
> [*Coventry Square,* 138 *N.J.* at 294, 650 *A.*2d 340 (citations omitted).]

Cox adds:

> [A conditional use] is a use *permitted* in a particular zone, but only upon certain conditions.

---

[1] After perfection of the appeal, the parties were asked whether South Amboy has a Zoning Board of Adjustment.  Both counsel have agreed in writing that South Amboy does have a zoning board.

\* \* \*

The treatment of conditional uses has been the subject of much deliberation in the courts, the reason simply being that a conditional use does not fit neatly into the prescribed rubric of either a permitted use or a prohibited use. Instead, a conditional use is a type of hybrid. The clearest indication of a conditional use's dual nature is the fact that when a conditional use meets all of the conditions mandated in the ordinance, jurisdiction over such use lies solely with the planning board; if it meets the conditions there is no *variance* required. *See, e.g., Omnipoint v. Board of Adjustment,* 337 *N.J.Super.* 398, 419, 767 *A.2d* 488 (App.Div.), *certif. denied* 169 *N.J.* 607, 782 *A.2d* 425 (2001): "the value of a conditional use to the general public is implied by the municipality's determination that the use should be permitted so long as it meets certain requirements. Furthermore, in the absence of any deviation from the enumerated conditions, the site is presumptively suitable." On the other hand, when the proposed conditional use does not comply with all of the conditions, jurisdiction over such use lies solely with the zoning board of adjustment, which must determine whether or not to grant a variance pursuant to 40:55D–70(d)(3). *Coventry Square v. Westwood Zoning Bd. of Adjustment,* 138 *N.J.* at 295, 650 *A.2d* 340. Accord, *Med. Ct. v. Princeton Tp. Zoning,* 343 *N.J.Super.* 177, 214, 778 *A.2d* 482 (App.Div.2001); *Perlmart v. Lacey Tp. Planning Board,* 295 *N.J.Super.* 234, 241, 684 *A.2d* 1005 (App.Div.1996).

\* \* \*

Conditional uses do not exist in a municipality unless specifically authorized in the zoning ordinance. It is, therefore, a matter within the discretion of the governing body as to whether or not conditional uses shall be provided for by ordinance. [Cox, § 17–1, at pgs. 419–420 (emphasis in original); § 17–2.1, at p. 421.]

Meszaros found statutory authority for his conditional use in § 53–88C(6) of the South Amboy Development Regulations Ordinance (SADRO), which deems a conditional use the construction of a two-family dwelling in a single-family residential zone. § 53–88C(6) says:

The following regulations shall apply in the RA Residential Zone:
\* \* \*
C. Conditional uses permitted upon application and approval.
\* \* \*
(6) *Two-family dwellings.*
[SADRO, § 53–88C(6).]

Also applicable is the SADRO's general conditional use article, which has one section, § 53–66. It applies to all conditional uses in the SADRO, and specifies that applications for such approval shall be made to the Planning Board. Under § 53–66 the Planning Board may consider "reasonable elements which would affect

the public health, welfare, safety, comfort and convenience" if the conditional use approval is granted.

In addition to his request for conditional use approval under § 53–66, Meszaros also sought approval of an easement for ingress and egress to allow emergency access to the proposed dwelling, as Lot 28.01 does not abut any street. To obtain the easement, Meszaros would have to satisfy the requirements of *N.J.S.A.* 40:55D–36.

The Planning Board held public hearings on Meszaros' application on May 20, June 26, and July 24, 2002. At the May 20th meeting, the Planning Board heard the testimony of Dill, Meszaros' architect and professional planner. He said "[Lot 28.01] is an awkward piece of land," but "[i]t violates none of the conditions contained within the conditional use requirements, nor does it require any bulk variances." While acknowledging the property was landlocked, Dill said the plan provides access by way of a proposed 18–foot access easement through the aisle space of the existing parking lot from Route 35. Meszaros would relocate three Music Box parking spaces for the easement, and the total number of spaces in the Music Box would remain constant. He emphasized that "in no way does this site plan ... affect the present occupancy of the Music Box either in the way that the operation is right now in [the] number of parking spaces or any of the other issues that came about as of the prior resolutions." Those resolutions included a December 26, 1990 resolution, January 26, 1994 resolution and December 14, 1995 resolution all permitting the operation of the Music Box on Lots 22.01 and 22.02, but with the restrictions that it have a total occupancy of 230 persons and 138 off-street parking spaces.

In addition to Dill, some adjoining residential property owners were heard, including William Torok and Thomas Vanni. Torok and Vanni discussed grading differences between properties, drainage runoff, fencing, and the aesthetics of a retaining wall. It appeared Meszaros would take the necessary steps to prevent problems in these areas. At the May 20th hearing, the Planning

Board also had before it a report prepared by its consultant, Angelo Valetutto, P.E., P.P. dated May 20, 2002. This report was generally favorable to Meszaros' application.

At the June 26, 2002 hearing, the Planning Board reviewed reports from the Fire Department, Police Department, and First Aid and Safety Squad on whether Meszaros' proposal would allow adequate emergency access. The Fire Department said it would have "a sufficient amount of space for apparatus placement," and the Police Chief said he found "no problem with any aspects of the application." The First Aid and Safety Squad only expressed the concerns that nighttime Music Box activity would inhibit access and that the new duplex might interfere with the local medical evacuation helicopter landing area on a nearby baseball field. The Planning Board also reviewed a drainage and sanitary report a Mr. Cleary performed. The Planning Board appeared satisfied with Meszaros' ability to comply with emergency access through signs or directional markings on the property, and it had no objection to Meszaros' counsel's argument that the proposal would not affect helicopter landing capabilities. Even though the Planning Board did not have all its members present, a motion was made to grant the application, but it was not seconded.

For reasons difficult to discern from the hearing records, the Planning Board voted against Meszaros' application at the end of the July 24, 2002 hearing. A resolution memorializing the decision was adopted on October 23, 2002. Because of a "voting error," the resolution was readopted on November 19, 2002. The resolution says Meszaros "did not apply for, nor did he address the need" for a variance from § 53–79a(27) of the SADRO, which prohibits more than one principal use on a property where the property spans two different zones. To make this argument, the resolution assumed Lots 22.01, 22.02, and 28.01 were one lot. During the hearings, the Board never suggested these three lots were one lot, or that Lot 28.01 became merged after the 1980 resolution creating Lot 28.01.

Citing the First Aid and Safety Squad's report on emergency access, the resolution makes the broad statement that the Board "is deeply concerned and finds and concludes that the Applicant has provided no viable means of keeping the proposed access free and clear of all parking during peak hours of the nightclub's operations, or otherwise." The resolution further suggests Dill's testimony was insufficient to give "proper responses and evaluations on behalf of the Applicant," even though Mr. Valetutto, a member of the Board, prompted Dill to testify about the application's feasibility. The resolution cites inadequate buffering, parking problems, and snow removal difficulties to support its decision, even though the Board appeared satisfied with Meszaros' responses to these problems at the hearings.

The Law Division rejected the Board's decision. As to the Board's argument that the properties were merged in 1980 and that such merger restricted the properties to only one principal use, namely the nightclub, the judge said, "[C]learly, in my mind, and I find as a matter of law, that that lot did not merge or attach to any other ... properties[.] [T]he lot stands on its own." He found the SADRO did not require site plan approval in these circumstances. He concluded:

It's clear that the [ . . . ] Board considered the application in total on two occasions. I find it interesting that [Mr. Valetutto] himself made [ . . . ] a motion for approval of the application; however, there was not a second motion at the first meeting. At the second meeting there was additional discussion. No one at that time raised any issues about the single lot theory with the merger or a lot theory, everything was going in accordance with what appeared to be favorable [ . . . ] in terms of the application as presented. At the third meeting additional issues of drainage were [ . . . ] discussed, sewerage was discussed.

Clearly in the Court's mind, the [ . . . ] City of South Amboy acted arbitrarily and unreasonably in terms of the application of the [ . . . ] applicant. The applicant satisfied all the requirements of the [SADRO], and has also satisfied the requirements of [ . . . ] the State's statute concerning the easement and access to the property. And based upon those considerations, the denial of the application by the Planning Board is reversed, and remanded to the Board for approval with any and all necessary and reasonable conditions which the Board finds.

As noted, the Board filed a notice of appeal on August 13, 2003.

## III

Before we address the points the Planning Board raises, we consider the legal sufficiency of SADRO § 53-88C(6) under the MLUL and case law. The MLUL says "[a] zoning ordinance may provide for conditional uses to be granted by the planning board according to definite specifications and standards which shall be clearly set forth with sufficient certainty and definiteness to enable the developer to know their limit and extent." *N.J.S.A.* 40:55D-67. Case law further emphasizes the importance of clarity in the conditions for a conditional use. These cases include *Exxon Co., U.S.A. v. Livingston Twp.,* 199 *N.J.Super.* 470, 489 *A.*2d 1218 (App.Div.1985); *Cardinal Properties v. Westwood,* 227 *N.J.Super.* 284, 547 *A.*2d 316 (App.Div.1988); *Loscalzo v. Pini,* 228 *N.J.Super.* 291, 549 *A.*2d 859 (App.Div.), *certif. denied,* 118 *N.J.* 216, 570 *A.*2d 972 (1989); *Macedonian Church v. Planning Bd.,* 269 *N.J.Super.* 562, 636 *A.*2d 96 (App.Div.1994); *Perlmart, supra; Adams v. DelMonte,* 309 *N.J.Super.* 572, 707 *A.*2d 1061 (App.Div.1998); and *Lincoln Heights v. Cranford Planning Bd.,* 314 *N.J.Super.* 366, 714 *A.*2d 995 (Law Div.1998), *aff'd o.b.,* 321 *N.J.Super.* 355, 729 *A.*2d 50 (App.Div.), *certif. denied* 162 *N.J.* 131, 741 *A.*2d 99 (1999). In many of these cases, the court has found conditional use clauses void for vagueness and crafted an appropriate remedy.

In *Exxon,* the gasoline company challenged the constitutionality of a Livingston Township ordinance that permitted gasoline stations and public garages as conditional uses in the B-1 business district, but prohibited the placement of a gas station within 500 feet of another gasoline station or of specific public uses, such as schools and churches. 199 *N.J.Super.* at 472-73, 489 *A.*2d 1218. This court found the provision unconstitutional, since the "effect of the proximity requirement . . . is to bar new gasoline station sites because of the number and location of pre-existing stations in the Township vis-a-vis other such uses and public buildings," *id.* at 473, 489 *A.*2d 1218, and "none of the problems traditionally associated with gas stations are any greater than for other commercial uses permitted in the B-1 Zone," *id.* at 476, 489 *A.*2d 1218.

In *Cardinal Properties*, the Westwood Planning Board granted conditional use approval for "an 8,000 square foot lot in the LM zone as a storage yard for the secure storage of impounded motor vehicles, and [ . . . ] the lot owner's application for site plan approval and variances." 227 *N.J.Super.* at 285–286, 547 *A.*2d 316. An adjoining landowner disputed the approval, arguing the standards for the conditional use as set forth in the Westwood Zoning Code were not "certain and definite" enough to meet statutory requirements. *Id.* at 286, 547 *A.*2d 316. The Law Division affirmed the Planning Board, but this court reversed. The Westwood ordinance provided that storage yards are a conditionally permitted use in a LM zone, they must be surrounded by a six-foot fence that will block vision of their content, and the conditional use must be "reasonably necessary for the convenience of the public in the location proposed." *Ibid.* Judge Bilder posed the issue as whether "need is a sufficiently definite standard to support creation of a conditional use." *Ibid.* This court found that need was an improper condition, since "[t]he zoning ordinance is intended to regulate property use, not competition." *Id.* at 287–288, 547 *A.*2d 316. This court appeared to dismiss the conditional use application and approval, but assured that its opinion "in no way [affected] the right of the board of adjustment to grant a variance pursuant to *N.J.S.A.* 40:55D–70d upon proper application." *Ibid.*

In *Loscalzo*, a section of Fairview's zoning ordinance deemed the construction of dwelling units in a mixed commercial-residential building's second and third floors in a B–1 commercial-residential zone as "conditional uses requiring approval of the planning board." 228 *N.J.Super.* at 295, 549 *A.*2d 859. The defendants wanted their florist business on the ground floor of a building and wanted to live in one of two apartments above the store. *Ibid.* Defendants realized their plan would not comply with the conditions of the ordinance. They sought a variance from the conditions, *i.e.*, a conditional use variance. After citing the statutory basis for conditional uses, *N.J.S.A.* 40:55D–67, the *Loscalzo* court concluded that "[t]he ordinance ... fails to set forth any 'specifications and standards' which must be met in order to

satisfy the criteria of a conditional use. To this extent the ordinance is deficient." 228 *N.J.Super.* at 299, 549 *A.*2d 859.[2]

In *Macedonian Church*, the Macedonian Orthodox Church owned property in a RLD–3 single-family low density residential zone in Randolph. 269 *N.J.Super.* at 565, 636 *A.*2d 96. The Church sought approval to construct on its property an all-purpose building that was more than twice the size and in a different location from a proposed smaller, auditorium-type building approved thirteen years earlier. *Id.* at 564, 636 *A.*2d 96. The Planning Board granted the Church's application, but the Law Division reversed. This court found the Board applied appropriate review standards to the application, and remanded to the Law Division to determine if the Board's decision rested on substantial credible evidence. *Id.* at 573–573, 636 *A.*2d 96. This court did not disturb the ordinance on the grounds of lack of specificity. Still, Cox observes:

> A closer look at the "conditions" at issue in *Macedonian Church* reveals one of the serious problems that can arise when conditional use provisions of an ordinance are too vague. In that case, the ordinance provided that conditional use approval could only be granted where the conditional use "does not substantially impair the present or future use and enjoyment of the surrounding area." Thus, if the planning board were to deny conditional use approval based upon noncompliance with the above conditions, the board of adjustment would be unable to grant a d(3) variance (which requires a determination that the proposed noncomplying conditional use would not substantially impair the zone plan) without contravening the planning board's prior action. Viewed in this light, it is clear that the "conditions" at issue in *Macedonian Church* result in the planning board's usurpation of the board of adjustment's function.
>
> [Cox, § 17–2.1, at 423.]

In *Perlmart*, this court reversed the grant of, among other things, conditional use approval for a K–Mart shopping center in Lacey Township. The court held K–Mart's required public notice

---

[2] The court then analyzed whether defendants satisfied the standards for a "c" or "d" variance, finding they did not. But, the Supreme Court later revised the standards the *Loscalzo* court used in this latter analysis. *See Coventry Square,* 138 *N.J.* at 293–94, 650 *A.*2d 340. *Coventry Square* does not affect *Loscalzo's* holding that the conditional use section of the ordinance was void.

did not specify that a K–Mart was planned or that the shopping center was a conditional use. 295 *N.J.Super.* at 235–236, 684 *A.*2d 1005. Because the notice of a conditional use was deficient, the Planning Board lacked jurisdiction to consider the application. *Id.* at 241, 684 *A.*2d 1005 (citations omitted). The court passed on the question whether the particular conditional use section was sufficiently specific, but said the provision was more specific than those found invalid in *Loscalzo* and *Cardinal Properties. Id.* at 243, 684 *A.*2d 1005.

In *Adams,* the defendant received conditional use approval from the Upper Pittsgrove Planning Board to operate a septic tank cleaning business from his home. His home was located in the LR–CL zone (low density residential cluster option). That zone's purpose was to restrict concentrated development which may have an adverse impact on the environment. The issue was whether the business constituted a home occupation, because if it did conditional use approval was necessary. In addition to general clauses for all conditional uses, 309 *N.J.Super.* at 575–576, 707 *A.*2d 1061, the ordinance expressed various conditions for the operation of a home occupation on one's residence. The Planning Board found defendant's business was a "home occupation" under the ordinance. Because they believed the ordinance was vague, defendant's neighbors filed a *R.* 4:69–1 action in the Law Division. That court found the action time barred. This court reversed and held the business was not a "home occupation" under the ordinance. 309 *N.J.Super.* at 575, 707 *A.*2d 1061.

Cox argues *Adams* is relevant not because of its discussions of *R.* 4:69–1 procedure, 309 *N.J.Super.* at 578–583, 707 *A.*2d 1061, or what constitutes a "home occupation," *id.* at 583–586, 707 *A.*2d 1061, but because of its tangled procedural history. Cox, § 17–2.1, at 423–424. The case started when, in response to neighbor complaints, a Zoning Board officer inspected the premises to determine whether defendant's operation complied with the ordinance. The officer instructed defendant to apply to the Planning Board for conditional use approval. The Planning Board then

referred the case to the Zoning Board because the Zoning Board never officially endorsed the Zoning Board officer's interpretation that conditional use approval was required. The Zoning Board held hearings and upheld the officer's decision that defendant engaged in a home occupation. Some months later defendant resubmitted his conditional use approval application to the Planning Board, which granted approval with further conditions. Only after the Planning Board decision did the plaintiffs file their action in lieu of prerogative writ. Of this procedural history, Cox comments:

> The procedural difficulties flowed from the imprecision of the ordinance's terms, which certainly did not meet the statutory standard as to conditional use. In such cases, it would seem best to reject the conditional use permit application and allow the zoning board to proceed with a "d" variance application, properly as a d(1) variance using the less precise accessory use ordinance language as a guide in the zoning board's considerations.
>
> [Cox, § 17–2.1, at p. 423.]

Finally, in *Lincoln Heights,* the Law Division affirmed the grant of a conditional use approval for the construction of a grocery store in a ROI–3 zone in Cranford. Under Cranford's ordinance, construction of a grocery store in the ROI–3 zone was a conditional use. Even though the court did not disturb the application, it found a separate ordinance clause relating to all conditional uses invalid because it was not specific and it "contravene[d] the balance of power struck between the planning and zoning boards as embodied in New Jersey's [MLUL]." *Lincoln Heights,* 314 *N.J.Super.* at 387–388, 714 *A.*2d 995.

■ Conditional use clauses in a zoning ordinance must have clarity and specificity. Otherwise, the balance of power between the planning and zoning boards becomes distorted. Clarity is also necessary for the applicant to know how to proceed with the application and for developers to know how to comply with the conditions expressed in the ordinance.

■ In this case, there are no conditions included in the conditional use authorization. § 53–88C(6) says "[c]onditional uses permitted upon application and approval[:][t]wo-family dwellings."

Nor is there any reference to § 53–66, the general conditional use section. Instead § 53–88C(6) makes the construction of a two-family dwelling in a single-family zone a phantom conditional use, a conditional use in name but not in substance. The thrust of the statutes and case law is that a conditional use without conditions is not a valid conditional use provision. Without such specificity, the planning board can encroach on the jurisdiction of the zoning board. Further, § 53–66 is totally vague because it contains no specific standard to guide applicants or the planning board. Even if two clauses are read in *pari materia,* § 53–88C(6) is still void.

■ Because § 53–88C(6) is void as too vague, the South Amboy Planning Board never had authority to review Meszaros' application. If there was a valid conditional use clause, the MLUL would give the Planning Board jurisdiction under *N.J.S.A.* 40:55D–60. That statute addresses Planning Board review "in lieu of board of adjustment":

Whenever the proposed development requires approval pursuant to this act of a subdivision, site plan, or conditional use, but not a variance pursuant to subsection d. of section 57 of this act (C. 40:55D–70), the planning board shall have the power to grant to the same extent and subject to the same restrictions as the board of adjustment:

a. Variances pursuant to subsection 57c. of this act [40:55D–70][.]

[*N.J.S.A.* 40:55D–60.]

Where the Planning Board obtains jurisdiction through a void conditional use clause (§ 53–88C(6)), it cannot sit as the Board of Adjustment and make decisions that implicate *N.J.S.A.* 40:55D–70c and d. *N.J.S.A.* 40:55D–70 authorizes the Board of Adjustment to make those decisions.

Because of these infirmities in the SADRO, the Planning Board was free to engage in an open-ended search for reasons to turn down the application. Especially at the final July 24, 2002 hearing, the Planning Board inquired into Meszaros' motivations for building a two-family dwelling versus building two separate single-family dwellings, and thought Lot 28.01 was more suitable to commercial development. There was no concentration on whether

conditions were satisfied, as there were no conditions to satisfy. The Planning Board cannot make such inquiries where it has no authority to modify the application to satisfy those criteria. Such authority lies with the Zoning Board under *N.J.S.A.* 40:55D–70.

After discussing prior cases where the conditional use clause of a zoning ordinance was found void, Cox's suggests "it would seem best to reject the conditional use permit application and allow the zoning board to proceed with a "d" variance application ..." Cox, § 17–2.1, at 423. We will do so here. Such a remedy will vacate the Planning Board's decision, and place legitimate concerns about parking, drainage, signs, traffic, and emergency access before the Zoning Board, the agency that is authorized to address those concerns.

The Planning Board never had authority to review Meszaros' application because the conditional use clause at issue is legally insufficient. We affirm the Law Division's ruling that Lots 22.01, 22.02, and 28.01 are separate lots. We further agree with the Law Division that the Planning Board's actions were arbitrary and unreasonable. However, Meszaros may proceed before the Zoning Board to seek variances under *N.J.S.A.* 40:55D–70c or d. This accommodates his wish to vacate the Planning Board's decision, but also allows public concerns about his application for a variance to be aired before the appropriate authority under the MLUL. We do not retain jurisdiction.

Affirmed in part, reversed in part. Respondent is free to apply to the Zoning Board for variances under *N.J.S.A.* 40:55D–70c or d.